SANDERSON and others, Respondents, vs. HERMAN, imp., Appellant.

*December 11, 1900 — February 1, 1901.*

*Municipal corporations: Street improvements: Special assessments: Reassessment: Validity: Arbitrary assessment: Change of grade: Statutes: Constitutionality: Repeal and re-enactment: Trial on pleadings: Judgment.*

1. A special assessment for a street improvement, which was held invalid because damages from change of grade were not determined at the same time, as required by the Milwaukee city charter, is within the purview of ch. 262, Laws of 1897, and secs. 1210d–1210f, Stats. 1898, providing for a reassessment when a special assessment is invalid " by reason of failure to observe any provision of law, or by reason of any act or defect in the proceedings upon which such special assessment . . . is based."

2. The certificate of the board authorized to make a reassessment that they viewed each lot and considered and determined, as to the

same, both the benefits and damages, costs, etc., less benefits resulting from change of grade, is not overcome by the mere fact that each lot of the same size is determined to have received the same benefit, especially when it appears that all the lots were used and affected substantially alike.

3. A statute (ch. 262, Laws of 1897, re-enacted in secs. 1210d–1210f, Stats. 1898) authorizing a reassessment when a special assessment is invalid, is not unconstitutional if it does not omit any requirement or condition which the legislature could not have dispensed with as prerequisite to the original assessment.

4. The declaration of the assessing board that a reassessment was made by them in compliance with ch. 262, Laws of 1897, which before the completion of their proceedings had been re-enacted in and superseded by secs. 1210d–1210f, Stats. 1898, is immaterial, where the proceedings complied with both acts, and each (whichever was in force) authorized them.

5. Whether, under the Milwaukee city charter, an attempted change of the established grade of a street by resolution, without any petition therefor, is of any force, and, if not of force, whether the city had power to improve the street to other than the old grade at the expense of lotowners, is immaterial, where there was practically no change in the actual grade, the increased elevation of the new pavement being very slight and only in the center of the street, and not involving expense in grading the street but, on the contrary, avoiding the expense of cutting it down for the new pavement.

6. Where a judgment recites that the cause came on for trial on defendant's answer, and the record discloses no objection to such trial, the appellate court will assume that the parties consented to treat the answer as the basis on which trial should be had, and stipulated that the answer was true, not only for the consideration of its sufficiency as a pleading, but also for the purposes of a trial.

7. Where parties submit a cause for trial on the pleadings, a final judgment is properly rendered; and upon a reversal thereof the appellate court will direct the proper judgment, not a new trial.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is a suit in equity to annul and enjoin enforcement of special assessment certificates issued under a reassessment for the same work involved in the certificates held invalid in *Saunderson v. Herman*, 95 Wis. 48, for the reason in that

case that no assessment of benefits and damages resulting from a change of established grade had been made. After the decision of that case and the enactment of ch. 262, Laws of 1897, to wit, July 6, 1897, the common council of Milwaukee passed a resolution directing the board of public works to make a reassessment under that chapter for benefits and damages resulting both from a change of grade and from the paving of Cape street, which was accordingly done. The board assessed benefits from the work done at the uniform rate of $240 per lot, except as to a certain triangular piece, to which was assessed $1,400 benefits. They then assessed as damages from the change of grade, including the improvements arising from such alteration, the cost of the work in front of each lot, and assessed as benefits conferred by said change of grade in common with other property on the street affected by such alteration of grade the uniform sum of $40 per lot, and upon the triangular piece $380. The net damages thus resulting from the change of grade, being deducted from the benefits assessed for the work done, still left an amount greater than the actual cost of the work abutting each lot, which accordingly was reassessed to its full amount against the several parcels of land, and special assessment certificates issued therefor, substantially corresponding in amount with those issued on the first assessment.

The answer set up the situation of the premises, the fact that the change of grade was nominal only, consisting merely in the increase of elevation resulting from putting stone pavement on top of the previous macadam, and that the declared elevation was almost entirely in the middle of the street, leaving the grade at the curb line practically unchanged; that no grading was done, save merely the smoothing of the surface, consisting in the removal of the pulverized macadam, and the leveling of depressions which existed therein, to make proper surface for laying stone blocks; that the ex-

pense of removing such pulverized macadam and filling
up such depressions in the pre-existing pavement did not
exceed two per cent. of the contract price of the total work
done. It also appeared that the entire tracts of lands of the
plaintiffs consisted on one side of the street in lumber-yard
property, and on the other in coal-yard property. The an-
swer further alleges that access to the premises was not dis-
turbed by the work done in the street, and that neither the
lots nor any improvements thereon were rendered less val-
uable.

The pleadings set forth the report of the board of public
works certifying that in making the assessment October 14,
1897, the board of public works viewed the premises and
considered the amounts to be made chargeable against the
said several lots or pieces of land, and the benefits, in their
opinion, actually accruing to, and the damages sustained by,
such several pieces from such work done, and at the same
time considered and determined the damages, costs, and
charges, including the cost of such improvement, arising
from the alteration of the grade, to the owners of each of
the several lots or parcels of land belonging to plaintiffs,
and also taking into consideration in each case any advan-
tages and benefits which are or might be conferred thereby
upon such lot or parcel of land in common with the other
property on said street affected by said grade. The reassess-
ment and certificates attacked were the result thereof.

The answer further alleges as a fact that by said change
of grade, and by the paving and curbing done by the con-
tractors, Donahue & Hoff, the premises of the plaintiffs
" were severally benefited to an amount exceeding the dam-
ages, costs, and charges, including the cost of such improve-
ment, arising from such alteration of grade, to the owners of
said several lots, and exceeding the amount of the certifi-
cates severally assessed against said lots, which this action
is brought to set aside."

The cause was submitted upon the pleadings, and the court held the answer not to constitute any defense, and rendered judgment in favor of plaintiffs in accordance with the prayer of the complaint, canceling said certificates, commanding the defendant *Herman* to deliver the same to the clerk for that purpose, and perpetually enjoining him from selling any of said certificates or from enforcing the same in any manner; from which judgment defendant *Herman* appeals.

For the appellant there were briefs by *Hoyt & Olwell*, and oral argument by *F. M. Hoyt*.

For the respondents there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. H. Noyes*.

The following opinion was filed January 8, 1901:

DODGE, J.    1. In a case between these same parties relating to a former assessment upon the plaintiffs' property of the cost of the same work now involved, it was decided that such assessment was invalid because the board of public works did not, at the time of making their assessment of benefits to result from the work to be done in pursuance with sec. 7, ch. VII, Milwaukee Charter [ch. 184, Laws of 1874, as amended], also determine and assess against the same lots the damages, costs, and charges arising from the alteration of established grade previously enacted by resolution of the common council, as required by sec. 8, ch. VII. The first question now raised is whether a situation thus arose and existed, coming within the terms of the statutes for reassessment of special assessments (ch. 262, Laws of 1897, and secs. 1210$d$–1210$f$, Stats. 1898), the former of which enactments became law in April, 1897, and the latter in August, 1897. Those acts, identical as to the immediate subject, described the conditions under which reassessment should be made for work done where special assessments had been attempted as: "When such special assessment, or any special assessment certificate, tax sale, tax sale certifi-

cate or special improvement bond based thereon is or may be invalid by reason of failure to make a proper assessment of benefits and damages, or by reason of any failure to observe any provision of law, or by reason of any act or defect in the proceedings upon which such special assessment, special assessment certificate, tax sale, tax sale certificate or special improvement bond, is based." We can entertain no doubt that the ground of invalidity of the former certificates was entirely within these laws. That ground was obviously a "failure to observe a provision of law," namely, the provision of sec. 8, ch. VII, requiring that determination of damages resulting from change of grade should be made at the same time that the benefits to result from the work itself are assessed. Even if, however, a narrower construction were conceded to the statute, namely, that the failure to observe a provision of law must occur in the very act of apportioning the cost after the contract has been let and the work done, still the omission to determine damages from change of grade, which under the charter should precede making the contract, would fall within the third condition of sec. 1210$d$. It would be "an act or defect in the proceedings on which such special assessment, or certificate, is based." The situation presented came clearly within the calls of the statute in question. Work of the character there described had been done, and the special assessment therefor and the certificates issued were invalid for one or more of the reasons specified. Under such circumstances the statute made the cost of the work, not exceeding net benefits ascertained by a reassessment, a lien upon the property, commanded the issue of certificates therefor, and required the inclusion and collection of the amount of such certificate as a tax.

2. Respondents, by way of objection to the reassessment itself, invoke the rule recognized in several cases in this court, that a mere arbitrary imposition is void, and point to

the uniformity in assessments of benefits both from the work done and from the change of grade,— $240 to each lot from the former, and $40 to each from the latter,— as indicating that no discrimination or judgment was exercised. An examination of all the cases cited by respondent, from *Johnson v. Milwaukee,* 40 Wis. 315, to *Hayes v. Douglas Co.* 92 Wis. 429, discloses that the proposition therein decided is that the report of the assessing board must show affirmatively that they in fact considered and determined the benefits and damage to accrue to each lot, and that a merely arbitrary assessment, resulting from a rule of apportionment or of arithmetic independently of the exercise of judgment as to the actual benefit or damage, would not suffice. True, it was pointed out that uniformity of assessment was a significant circumstance, as there might be many others, to indicate an evasion of the duty of judgment as to each parcel, and to disprove such declaration in a report. See *Kersten v. Milwaukee,* 106 Wis. 200. Lack of such uniformity was, however, held suspicious in *Johnson v. Milwaukee, supra.* In no case, however, has it been held that such uniformity alone was sufficient to overcome the declarations of the officers, if any were contained in their report, though it might serve to further discredit a report and assessment which was barren of such declarations. In *Hayes v. Douglas Co., supra,* it was said: "When it is required that the assessment shall be according to benefits accruing to each parcel, an assessment by the frontage rule does not show affirmatively a compliance with the statute. While such assessment is not necessarily erroneous, it is presumed to be so, unless the return shows that the board has considered that matter and finds that the benefits are in the proportion of the frontage of each parcel." In the present case the return of the board of public works expressly certifies that they did view each lot and consider and determine, as to the same, both the benefits and damages, costs, etc., less

benefits resulting from change of grade. This official certificate is not overcome by the mere fact that each lot of the same size is determined to have received the same benefit, especially when, as here, it is made apparent that all the lots were used substantially alike, as a coal yard on one side of the street, and as a lumber yard on the other, and that the so-called change of grade was such as not to materially affect the accessibility, use, or value of any of them. Such extrinsic facts might not serve to supply the want of necessary averments in the report, but they are cogent to overcome other facts and circumstances by which such averments are sought to be denied. *Hennessy v. Douglas Co.* 99 Wis. 129.

3. Next it is contended that ch. 262, Laws of 1897, and its re-enactment in secs. 1210*d*–1210*f*, is unconstitutional. The authority in our own state is overwhelming in support of laws authorizing reassessment both of general taxes and of special assessments. There can be no doubt that the legislature has power to ratify imposition or direct reassessment of taxes which it might originally have authorized. *Cross v. Milwaukee*, 19 Wis. 509; *Dean v. Borchsenius*, 30 Wis. 236, 247; *Flanders v. Merrimack*, 48 Wis. 567. Whatever construction be given to it, sec. 1210*d* does not transcend the power of the legislature to prescribe conditions upon which the cost of an improvement may be imposed on the property benefited. If it be urged that conditions required by the charter originally cannot now be complied with,— such, for example, as that the ascertainment of benefits and damages cannot now precede the letting of the contracts, as was obviously the policy of the charter,— it is a complete answer that the legislature might originally have authorized a special assessment without making such ascertainment an essential preliminary to contracting. Indeed, had the legislature seen fit to authorize a reassessment

Sanderson and others vs. Herman.

for the work in raising a street above its lawfully established grade in absence of any resolution lawfully changing the grade, how could we declare such act unconstitutional? The same imposition might have been authorized originally without requiring, as a condition, such preliminary action. No respect is suggested by counsel, and none occurs to us, wherein sec. 1210$d$ omits any requirement or preliminary to imposition by reassessment of the expense of public improvements which the legislature might not, in its judgment, have dispensed with as prerequisite to original special assessments. That being so, we cannot hold that any constitutional limit to legislative power has been transgressed.

The suggestion that ch. 262, Laws of 1897, had, before the completion of the reassessment proceedings, been superseded by sec. 1210$d$, we deem of no importance. The latter is merely a substantial re-enactment of the former, and but perpetuates in existence the same legislation. The proceedings comply with both acts, and each (whichever was in force) authorized them. The fact that the report of the board declares their acts to have been done in compliance with the former act is wholly immaterial. Such declaration is not a denial that they also complied with the later one.

4. The most serious questions raised are whether, under the provisions of the Milwaukee charter, the attempted change of grade by resolution, without any petition therefor, is of any force at all, and, if not of force, whether the city government had any jurisdiction or power to improve the street to other than the old grade at expense of the lot-owners. These questions are, however, immaterial, and their decision is not essential, for the reason that it clearly appears from the answer, entitled as it is to liberal construction and to be taken as true, that, from a practical point of view, no

Sanderson and others vs. Herman.

change has been made or attempted in the actual grade of the street. The increased elevation of the finished pavement was only about six inches above the old established grade, and that only in the center of the street. Such elevation, of course, did not involve expense in grading the street, but, on the contrary, avoided the expense of cutting down the old street to make room for the stones and the substratum necessary for permanently laying them,— expense which must have fallen on the lotowners had the city laid the new pavement at the exact level of the old grade. The result to the lots themselves is alleged to be without injury, cost, or inconvenience. The so-called change of grade was so slight and so without injurious effect that we must look upon it as *de minimis*, for which the law cares not, and for which the courts should not be troubled to seek remedy. Had the city undertaken to lay the pavement at the elevation in fact adopted, without any resolution purporting to change the established grade, no equity would have been presented in favor of the lotowners to prevent assessment of the cost upon them; and that consideration is not changed or affected by the fact that such a resolution was adopted, although the passage of the resolution might make necessary compliance with sec. 8, ch. VII, of the charter, requiring in such case an assessment of the damages, as decided in the former case.

None of the other suggestions of respondents' counsel seem to us to call for discussion. The defect found in the first proceedings, namely, the failure to include, at the same time with the assessment of benefits from the doing of the work, an assessment of the damages caused by the ostensible change of grade, does not exist in the present proceeding. It is now found that after ascertaining such damages and deducting them from the benefits caused by the improvement the net benefits still exceed the cost of the work, which, therefore, is now reassessed against the lots. The

reassessment proceedings are regular and comply with the directions of the charter. The facts as established by the admitted allegations of the complaint and by the answer present no equitable reason why the plaintiffs should not, in accordance with the policy of the charter and of sec. 1210*d*, Stats. 1898, pay the cost of the improvement of the street in front of their premises; it being less than the benefits conferred upon them. The conclusion is irresistible, under authority of *Wells v. Western P. & S. Co.* 96 Wis. 116, that a court of equity ought not to interpose in their behalf to prevent enforcement of such payment by the ordinary statutory machinery. The trial court should have refused to do so, and the judgment appealed from is erroneous.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.

BARDEEN, J., took no part.

The following opinion was filed February 1, 1901:

DODGE, J.  Respondents move to amend mandate so as to grant a new trial instead of ordering judgment for the defendant. This motion they predicate on the proposition that the judgment rendered by the circuit court in favor of the plaintiffs was founded upon a "motion for judgment on the answer," and contend that, had that motion been denied, they would then have been entitled to try the issue raised by the complaint and answer. Without considering whether that contention is correct, it suffices to point out that the situation upon which it is predicated is not shown by the record. We do not there find that there was a motion for judgment upon the answer. There is no bill of exceptions, and the judgment recites: "This cause having come on for trial before said court upon the answer of the defendant, . . .

the court finds that all the allegations of the complaint are
admitted by the answer of the defendant *Henry Herman,*
and exhibits thereto attached, except such allegations in said
complaint as are denied by said answer, and that the answer
of the said defendant *Henry Herman* does not constitute any
defense herein, and that the plaintiffs are entitled to judg-
ment in accordance with the prayer of the complaint." Upon
this we must rely for information as to the proceedings.
*Iron River v. Bayfield Co.* 106 Wis. 587. No other con-
struction can be placed upon the recitation that the cause
came to *trial* upon the answer, than that both parties con-
sented to treat the answer as the basis upon which trial
should be had. The record discloses no objection or excep-
tion to such trial. The consent to a trial upon that basis
must be construed as a stipulation that the answer is true,
not alone for the purposes of a motion or for the mere con-
sideration of its sufficiency as a pleading, such as would be
the admission in case of a demurrer, but true for the pur-
poses of a trial from which is to result final adjudication of
the rights of the parties. The trial of an action is a very
different proceeding from the consideration of a demurrer
or of a motion. It would be trifling with the court to invite
it, by consent of counsel, to enter upon the trial of an action
upon a given basis, and, when decision is reached as the re-
sult of such trial, to contend that the proceeding was tenta-
tive and experimental only. The view both of the court
and of counsel for respondents is rendered apparent by the
fact that, at the motion of counsel, final judgment was en-
tered as the result of that trial. If the question submitted
were, as counsel now contends, merely the sufficiency of the
answer as a pleading, on resolution of which against the
plaintiffs they should have a right to try the issues, the re-
ciprocal right to the defendant of amendment in case of de-
cision against him would seem clear, but nowhere in the

Sanderson and others vs. Herman.

record is suggestion that any of the parties contemplated such a privilege. We think it plain, therefore, that the present motion of the respondents should be denied. The cause having been submitted to the circuit court for trial upon a given basis, it becomes the duty of this court, on reversing the action in fact taken by that court, to direct the action which would have been proper.

*By the Court.*— The motion is denied.