HAUBNER, Respondent, vs. CITY OF MILWAUKEE, Appellant.
HAUBNER, Respondent, vs. CITY OF MILWAUKEE and another, Appellants.

*October 22, 1904—February 21, 1905.*

(1) *Actions: Consolidation: Order of trial.* (2–7) *Municipal corporations: Special assessments for street improvements: Validity: Reassessment: Right of abutting owner to damages: Milwaukee city charter.*

1. Refusal to consolidate an action against a city to recover for injury to plaintiff's lot by the cutting down of the street in front thereof with an action against the city, its treasurer, and the contractor, to set aside a special assessment certificate issued for such work to said contractor, and for other relief, is *held* not to have been error; nor was it error to direct the trial of the action at law first, immediately followed by that of the suit in equity, the court having control of both cases at the same time.

2. An assessment by the board of public works of the benefits and damages to abutting lots by reason of the grading of a street in

Haubner v. Milwaukee, 124 Wis. 153:

Milwaukee was made without separate consideration of the several lots, although they were very differently affected by the improvement; it was not made at the time of viewing the premises, but at a different time and in the office of the board; and it assessed a uniform sum per front foot as benefits along the whole street, and awarded no damages whatever for injuries. *Held*, that under the city charter such assessment was void.

3. By sec. 1210e, Stats. 1898, as amended by ch. 354, Laws of 1903, a reassessment is provided for in every case where a special assessment for street improvement is held invalid by reason of defects in the assessment of benefits and damages, whether such invalidity be determined in an action at law or one in equity.

4. The amendment to sec. 1210e, Stats. 1898, by ch. 354, Laws of 1903, whereby a reassessment was provided for in legal as well as in equitable actions, was applicable to actions thereafter commenced, although the assessments complained of were made prior to its enactment.

5. Although an abutting lotowner has no right, either by statute or at common law, to recover for damage to his land resulting from the original grading of the street done lawfully and regularly, yet where the city fails to proceed in the manner prescribed by law it becomes liable for the damage proximately caused to such owner by the improvement.

6. The right of the lotowner in such a case to recover for the damage to his land could not be taken away by a subsequent amendment (ch. 354, Laws of 1903) of the statute relating to reassessment of benefits and damages; but no constitutional right of the lotowner is invaded by the provision, in such subsequent statute, for a reassessment of the amount of benefits which he ought to pay to the city, and a reassessment so provided for should be ordered in his action to recover for the damage, upon the original assessment being held invalid.

7. If, in such a case, relating to land in the city of Milwaukee, the benefits as ascertained by such reassessment are less than the legal damages to which the lotowner is entitled, the difference is to be paid to him out of the proper ward fund.

APPEALS from judgments of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

On November 5, 1903, the plaintiff, as owner of lot 6 in block 13, having a frontage on Fifth street of fifty feet, commenced this action at law in the superior court of Milwaukee

county to recover damages for cutting down the street in front of his lot and thereby injuring his premises. The complaint alleges, among other things, in effect, that March 14, 1900, the city, by ordinance, permanently established the grade of Fifth street from Burleigh street (being the street next south of the plaintiff's lot) north to Ring street and beyond, several blocks north of the plaintiff's lot; that by such grade the center of Auer avenue (being the first street north of plaintiff's lot) was twenty feet higher than the center of Burleigh street, and the south line of Ring street (which is the first street north of Auer avenue) was forty-three and one half feet higher than Burleigh street; that May 19, 1902, the board of public works recommended the grading and macadamizing of Fifth street; that July 14, 1902, the common council, by resolution, directed the board of public works to improve Fifth street, as recommended, from Chambers street (being the first street south of Burleigh street) to Ring street; that August 25, 1902, the board transmitted to the common council its assessment of benefits and damages to the lots fronting on Fifth street between Chambers street and Ring street by reason of such improvement, dated August 15, 1902, reciting that it viewed the premises August 6, 1902, and that the benefits to the plaintiff's lot No. 6 were $175 (that is to say, $3.50 per front foot), and his damages nothing; that the benefits to each and all the lots on both sides of Fifth street between Burleigh street and Ring street were assessed therein at $3.50 per front foot, and no damages were assessed to any of said lots; that such assessment was unlawful, arbitrary, and not made on view of the premises, nor, as to the effect of the grading, as to each lot or piece of land separately, but was falsely and arbitrarily made, as mentioned, at the office of the board, without personal inspection, and without considering the damage to the lots, respectively, and such assessment was based solely upon the cost of the improvement per front foot; that the board well knew that the plaintiff's lot

would be injured at least to the extent of the special assessment certificate to be issued thereon, and for such injury no consideration or allowance was made; that the original surface of the center line of Fifth street between Burleigh and Ring streets varies more than forty-two feet from a level; that on the east line of Fifth street such variation is more than thirty-seven feet, and on the west line of such street such variation is 43.49 feet; that the grading of Fifth street in question varies from the fill of five or six feet to a cut of from ten to twelve feet along various parts thereof, but that the board made a uniform assessment of benefits of $3.50 per front foot, and awarded nothing for damages or injury; that August 30, 1902, the common council adopted such assessment, and thereafter let the contract for such improvement to the contractor, the defendant Froemming in the equity suit hereinafter mentioned, under and in pursuance of said assessment, and by the authority and direction of the city he proceeded to do the work; that such work was so negligently and improperly performed that the plaintiff's approach to his lot along the entire front was blocked and shut off by a vertical wall of earth from eight to ten feet in height, to the plaintiff's great damage; that the cost of cutting and filling in front of the plaintiff's lot was $79.80, and all other fifty-foot lots varied from $4.20 to $86.70. Judgment is prayed for $2,000 as damages.

On January 21, 1904, the defendant answered such complaint by way of admissions, denials, and counter allegations. February 13, 1904, the plaintiff commenced an action in the circuit court to annul the assessment certificate, and to cancel and set aside the same, and for an injunction. June 4, 1904, the defendant served its answer in such equity suit so pending in the circuit court. June 10, 1904, the action at law was called for trial in the superior court. Thereupon the defendant asked leave to amend its answer, setting up the pendency of the equitable action in the circuit court, and asked that the venue of the action at law be changed to the circuit court for

the convenience of witnesses, under subd. 3, sec. 2622, Stats. 1898. The plaintiff objected to such change of venue, and offered to accept the amended answer and to proceed to trial at once; and thereupon the defendant amended its answer in the action at law by alleging the pendency in the circuit court of the equity suit against the city and its treasurer and one Froemming, the contractor. The court then stated that both cases ought to be tried by the same judge; that the party who was ready was entitled to proceed with his case first. It was then stipulated in open court that the venue of the equity suit be changed to the superior court for trial as soon as an order to that effect could be made. The court then directed counsel to proceed with the trial of the action at law, which had already been called. The defendant then expressed a desire to try the equity suit first, to which the plaintiff objected; and the court concluded to try the law case first, and then dispose of the equity case afterwards. Thereupon the court and jury, without objection, viewed the premises. The defendant then asked that the cases be tried together and consolidated, which motion was denied, and the court stated that the cases would be tried together—that is, the trial of the equity case would follow the trial of the law case,—with which the defendant's attorney expressed himself satisfied.

Thereupon the action at law was tried on the 10th and 13th of June, 1904, and at the close of the trial the jury returned a special verdict to the effect (1) that the property of the plaintiff was depreciated in value by the grading of Fifth street; (2) that the difference in value of such property immediately before and immediately after such grading was $200. Such verdict was filed June 14, 1904. June 13, 1904, the same court and judge entered upon the trial of the equity suit. June 18, 1904, the court ordered judgment on the special verdict in the action at law for $200, with costs and disbursements to be taxed. July 2, 1904, the defendants moved for a stay of proceedings therein, and that the court order a

reassessment, and the same was denied, to which the defend-. ants excepted. July 6, 1904, judgment was entered, filed, and docketed on such verdict for the amount stated. July 7, 1904, the same court filed its findings of fact and conclusions of law, based upon the same evidence as in the action at law, and the facts found are substantially as alleged in the complaint in the action at law, and above stated; and, in addition, the court found to the effect (11) that the plaintiff's lot was not benefited by such grading and improvement of Fifth street, in excess of the injury to his premises, but, on the contrary, such injury was in excess of all benefits derived therefrom; (12) that the contractor completed his work under the contract, and the city issued and delivered to him a certificate of the board of public works for the work so performed, which certificate was a lien upon the plaintiff's lot, but that the contractor had, before the commencement of this action and service of the injunctional order herein, in good faith and for value received, duly sold, assigned, and transferred the same, and all his right, title, and interest therein, to a third person, unknown to the court, in whose hands the same now is.

As conclusions of law the court found, in effect, (1) that the assessment of benefits and damages was wholly arbitrary and without authority of law, and was illegal and void; (2) that the city and the contractor were without jurisdiction to grade and improve the street as prescribed by the resolution of the common council; (3) that the damages sustained by the plaintiff by reason thereof were in excess of any benefit derived therefrom; (4) that the certificate issued to the contractor was so issued without authority, and was void, and should be delivered up for cancellation; (5) that the city and its treasurer should be permanently restrained from selling, or offering or attempting to sell, the plaintiff's property by reason of such certificate or any proceedings under said assessment; (6) that the plaintiff was entitled to judgment for a permanent injunction against the city and its treasurer, and

that the certificate be declared null and void, together with costs and disbursements to be taxed,—and ordered judgment to be entered accordingly. Judgment was so entered July 7, 1904, and on the same day the city and its treasurer brought this appeal; and the city also on the same day appealed from the judgment so entered in the action at law.

For the appellants there were briefs by *Carl Runge,* city attorney, and *R. S. Witte,* assistant city attorney, and oral argument by *Mr. Witte.*

For the respondent there were briefs by *Hamilton, Van Wyck & Silber,* and oral argument by *C. H. Hamilton* and *Howard Van Wyck.*

The following opinion was filed December 13, 1904:

CASSODAY, C. J. 1. Error is assigned because the court refused to consolidate the action at law with the suit in equity, and also refused to try the equity suit first. No such question was suggested until after the superior court had entered upon the trial of the action at law, nor until after the city had asked and obtained leave to amend its answer, setting up the pendency of the suit in equity in the circuit court, and the city had sought and failed to have the venue in the action at law changed to the circuit court, and the venue in the equity suit had, by stipulation, been changed to the superior court. What occurred in respect to the matter is fully set forth in the foregoing statement, and need not be here repeated. The action at law was simply for damages, and against the city alone. The suit in equity was against the city, its treasurer, and the contractor, and the prayer was for different relief. The court had stated that the two "cases ought to be tried by one and the same judge." The court fully appreciated the close relationship between the two cases, and entered upon the trial of the suit in equity immediately upon the action at law being submitted to the jury. Of course, the court had control of the verdict, and so of both cases at the same time. The

order in which they should be tried was certainly within the discretion of the trial court. Secs. 2647, 2844, Stats. 1898. The fact that the action at law was first tried did not prevent the court from doing justice to the parties in both cases. We find no reversible error in refusing to consolidate the two actions, nor in trying the action at law before the suit in equity.

2. It is found by the court, in addition to what is stated above, and is undisputed, that the excavation in front of the plaintiff's lot was from six to ten feet, leaving a vertical wall of earth of that height along the entire front thereof; that all the lots fronting on the street in question, between Burleigh street and Ring street, except one lot 250 feet north of the plaintiff's lot, were assessed at a uniform rate per front foot; that the estimated expense of grading the several lots having a frontage of fifty feet varied from $4.20 to $86.70; that such expense in front of the plaintiff's lot was $79.80; that in making the assessment the several lots were not separately considered and benefits and damages assessed to each lot; that the assessment was not made at the time of viewing the premises, but at a different time and at the office of the board; that the grade of the street in question varied from a fill of six feet to a cut of twelve feet, along various parts thereof; and that the board made a uniform assessment of $3.50 as benefits per front foot along the entire line of the street in question, and awarded no damages for injury whatsoever. Under the decisions of this court, construing the charter of the city, there can be no question but that such assessment was void. *Kersten v. Milwaukee,* 106 Wis. 200, 81 N. W. 948, 1103; *Sanderson v. Herman,* 108 Wis. 662, 666–668, 84 N. W. 890, 85 N. W. 141; *Friedrich v. Milwaukee,* 114 Wis. 304, 90 N. W. 174; *S. C.* 118 Wis. 254, 95 N. W. 126. This seems to be conceded by counsel.

3. Error is assigned because the court, prior to the entry of judgment in either case, refused to grant a stay of proceedings and order a reassessment, as prescribed by sec. 1210e,

Stats. 1898, as amended by ch. 354, Laws of 1903. Whether such ruling was right is the important question in this case. Prior to that amendment that section provided that:

"If in any action to set aside any special assessment against property for any of the purposes mentioned in section 1210d [which includes street improvement], or to set aside any special assessment certificate . . . the court determine that such assessment is invalid by reason of a defective assessment of benefits and damages, it shall stay all proceedings in such action until a new assessment thereof be had in the manner hereinafter mentioned; . . . When the amount to be assessed against the plaintiff's property has been finally determined by an assessment of benefits and damages which the court shall hold to be valid, or when an appeal is taken, the court shall make an order requiring the plaintiff to pay into court, within a time to be fixed by such order, for the benefit of the parties entitled thereto, the amount which, based upon such valid new assessment, he ought justly to pay, or which should be justly assessed against the property in question; upon compliance with said order judgment shall be entered for the plaintiff with costs. If the plaintiff fails to comply with such order the action shall be dismissed with costs."

In obedience to that section it was held by this court three years prior to that amendment, in effect, that the remedy by appeal to the circuit court for such illegal assessment, provided by the charter of *Milwaukee,* was not exclusive, but that the aggrieved party might resort to a court of equity. *Kersten v. Milwaukee,* 106 Wis. 200, 206, 81 N. W. 948, 950, 1103. In that case it was also held that "where, in an action to set aside a special assessment for street improvements, the assessment is held invalid by reason of defects in the assessment of benefits and damages, it is the duty of the court, under sec. 1210e, Stats. 1898, to stay proceedings, so far as relates to the assessment of benefits and damages, order a reassessment, and make payment of the amount finally determined a condition of judgment." That was followed by *Sanderson v. Herman,* 108 Wis. 662, 666–668, 84 N. W. 890, 85

N. W. 141, decided two years prior to the amendment mentioned. Each of those cases was in equity to set aside a special assessment against property for a purpose mentioned in sec. 1210*d*, as mentioned in sec. 1210*e,* Stats. 1898. In each of those cases the right to a stay of proceedings and a reassessment was expressly sanctioned. In *Friedrich v. Milwaukee,* 114 Wis. 304, 90 N. W. 174, a complaint for damages on account of such illegal assessment was sustained, and no reassessment was ordered, because it was on demurrer and, as there stated, the cause of action alleged or sought to be alleged was not in equity to enforce a reassessment under the statutes (secs. 1210*d*–1210*f,* Stats. 1898), as in the two cases just mentioned. That decision in *Friedrich v. Milwaukee* was made by this court more than a year prior to the enactment of ch. 354, Laws of 1903. Subsequently that case was tried on the merits, and a judgment for damages in favor of the plaintiff was affirmed by this court. *Friedrich v. Milwaukee,* 118 Wis. 254, 258, 95 N. W. 126. That case was argued in this court two weeks prior to that enactment, and decided four days after that act went into effect. Obviously the decisions mentioned led to the enactment. One of the purposes of that act was to make the statutes apply to actions at law as well as suits in equity. And so it prefixes to sec. 1210*e* a provision which declares that:

"If in any action at law for the recovery of damages arising from a failure to make a proper assessment of benefits and damages, as provided by law, or failure to observe any provisions of law, or because of any act or defect in any proceeding in which benefits and damages are assessed," etc. Ch. 354, Laws of 1903.

That is followed by what is quoted from sec. 1210*e,* above, and also other provisions of that section. By sec. 1210*e,* as thus amended, a complete scheme for reassessment was provided in every case where the special assessment for street improvement was held to be invalid by reason of defects in the

assessment of benefits and damages—whether such invalidity be determined in an action at law or in equity. In other words, the right to a reassessment when such invalidity was determined in an action in equity, as held in *Kersten v. Milwaukee* and *Sanderson v. Herman, supra,* was, by the statute, as amended by ch. 354, Laws of 1903, also given when such invalidity is determined in an action at law.

4. It is claimed that the amendment was not retroactive, and hence did not apply to either of the cases at bar. That chapter went into effect more than six months prior to the commencement of the action at law, and nearly nine months prior to the commencement of the suit in equity. True, the assessments complained of were made prior to that enactment. But, as indicated, the act merely extended the remedy by reassessment which previously existed when such invalidity was determined in an action in equity to the cases in which such invalidity is determined in an action at law. It did not undertake to destroy or impair any substantial right. By its terms it applied "in any action at law" or in equity therein prescribed, and hence applied to the cases at bar.

5. But it is claimed that the damage to the plaintiff's lot by reason of the wrongful acts complained of gave to the plaintiff a right of action against the defendant, which, under the constitutions—state and federal—could not be divested or impaired by subsequent legislation. Secs. 9, 13, art. I, Const. Wis.; sec. 1, art. XIV, Const. U. S. Moreover, it is claimed that such right is not preserved by the statute in question, nor by the city charter, and that there is no provision for paying an award in the lotowner's favor in case of an appeal. Of course, the provisions of the charter of *Milwaukee* are to be considered in connection with the statutes mentioned. Neither the charter nor the statute attempts to deprive the lotowner of any damages in excess of the benefits, and hence they are not objectionable on that ground. *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187; *Lathrop v. Racine,* 119 Wis. 461, 475,

97 N. W. 192. Thus in the chapter of the charter on "Taking Property for Streets and Other Purposes" it is provided that:

"If the total amount ·of damages as assessed, exceeds the total amount of benefits as assessed, the excess of such damages shall be chargeable· to and paid out of the *general city fund and the ward funds* of the wards in which the lands proposed to be taken are situated, in equal proportions." Sec. 6, ch. VI.

And again that chapter provides that:

"If the damages to any person be greater than the benefits. received, or if the benefits be greater than the damages; in either case the board shall strike a balance, and carry the difference forward to another column so that the assessment will show what amount is to be *received or paid by such owner* or owners respectively, and *the difference only* shall in any case be collected *of them or payable to them.*"   Sec. 8, ch. VI.

It also gives to the lotowner the right to appeal from such assessment to the circuit court, upon giving the notice and bond prescribed, and provides that if upon the trial in the circuit court

"the benefits assessed by the said board of public works shall be diminished, or the damages so assessed shall be increased, then and in either case the appellant shall recover costs on such appeal, otherwise the city shall recover costs.   When the jury shall, by their verdict, award damages to the owner of any lot or part of a lot, and judgment shall have been rendered upon such verdict, the said city shall pay the amount of such judgment, and the costs, if any, recovered therewith. . . . And in case the appellant shall succeed, the difference between the amount assessed and the amount finally adjudged shall be chargeable to and paid out of the proper ward fund." Sec. 14, ch. VI.

So in the chapter of the charter on "City Improvements. and Special Assessments" it is provided that "the grading . . . shall be chargeable to and payable by the lots fronting or abutting upon such streets . . . to the amount which such

grading . . . shall be adjudged by said board to benefit such lots." Sec. 2, ch. VII. The same section provides for paying certain expenses out of the ward fund. That chapter then prescribes the proceedings essential in "grading or improving streets." Sec. 6, ch. VII. It then provides for the "assessment of benefits for street work" on lots abutting thereon, "taking into consideration in each case any injury which in the opinion of the board may result to each lot or piece of land from such improvement; and in case the benefits, in their opinion, amount to less than the cost of the improvement, the balance shall be paid out of the ward fund of the ward or wards in which such improvement is made." Sec. 7, ch. VII. The next section provides for compensation to lotowners for change of grade, and assessments therefor, and provides that "the excess of the said damages, costs and charges over the benefits assessed, as provided in the preceding section, shall be paid out of the ward funds of the ward or wards in which such improvement and alteration of grade shall be made." Sec. 8, ch. VII. That chapter then gives to the lotowner the right to appeal from such assessments to the circuit court upon giving the notice and bond prescribed; and then declares that:

"Such appeal shall not affect the rights of the contractor, or the proceedings in reference to his contract, but the certificate against the lot or parcel of land in question shall be given as if no appeal had been taken; and in case the appellant shall succeed, the difference between the amount charged in the certificate and the amount of the benefit finally adjudged, shall be paid by the city out of the proper ward fund, to the appellant, but not until he shall have done the work in question, or have paid the certificate issued for doing the same. The amount assessed by the board of public works, or finally adjudged on appeal, for damages, costs and charges arising from an alteration of the grade, *in excess* of the amount charged against property deemed benefited, shall be paid by the city out of the proper ward fund, to the person or persons thereto entitled," as therein provided. Sec. 11, ch. VII.

It is true that the charter provides that such appeal shall be the lotowner's only remedy for such damages. Sec. 15, ch. VI; sec. 12, ch. VII. But such provisions in the charter could not prevent the legislature from providing otherwise, as they did by sec. 1210*e*, Stats. 1898, as held by this court in the cases cited. *Kersten v. Milwaukee,* 106 Wis. 200, 81 N. W. 948, 1103; *Sanderson v. Herman,* 108 Wis. 662, 84 N. W. 890, 85 N. W. 141. In those cases it was held that the right to appeal given to the lotowner by the city charter was not exclusive, but that the person aggrieved might resort to a court of equity; and now, under ch. 354, Laws of 1903, he may resort to reassessment in a court of law. As already indicated, the statute declared before and since that amendment, in effect, that when

"an assessment of benefits and damages" has been held to be valid by the court, "or when an appeal is taken, the court shall make an order, requiring the plaintiff to pay into court, . . . *for the benefit of the parties entitled thereto,* the amount which, based upon such valid new assessment, he ought to justly pay, or which should be justly assessed against the property in question; upon compliance with said order judgment shall be entered for the plaintiff with costs. If the plaintiff fails to comply with such order the action shall be dismissed with costs."

It will be observed that the lotowner is only required to pay into court the amount he ought justly to pay according to such new and valid assessment, and that such payment is to be for the benefit of such parties as the court may adjudge to be entitled thereto. Of course, the rights of the contractor are to be considered, the same as though the lotowner had appealed to the circuit court from the assessment under sec. 11, ch. VII of the charter, mentioned above. So the money so paid into court is to be finally disposed of by the court, sitting as a court of equity, to the parties entitled thereto. The amount finally adjudged for damages, costs, and charges, "*in excess* of the amount charged against property deemed bene-

fited, shall be paid by the city out of the proper ward fund, to the person or persons thereto entitled," the same as though the owner had appealed to the circuit court, under the section of the charter last cited. Where a municipality is thus made liable to the lotowner for any damages sustained in excess of such benefits, the taxable property of such municipality constitutes a pledge or fund to which the owner may resort for payment in the manner prescribed by the statute. *Norton v. Peck,* 3 Wis. 714, 724; *Brock v. Hishen,* 40 Wis. 674; *Smeaton v. Martin,* 57 Wis. 364, 15 N. W. 403, and cases there cited; *Smith v. Gould,* 59 Wis. 641, 18 N. W. 457; *State v. Hogue,* 71 Wis. 390, 36 N. W. 860; *State ex rel. Burbank v. Superior,* 81 Wis. 654, 51 N. W. 1014. We perceive no invasion of the plaintiff's supposed constitutional right to damages by reason of such proposed reassessment. We must hold that the court improperly refused to stay proceedings and direct a reassessment as prescribed by sec. 1210e, as amended by ch. 354, Laws of 1903.

*By the Court.*—Both of the judgments of the superior court of Milwaukee county are reversed, and the causes are both remanded for further proceedings as indicated in this opinion.

·The appellants moved for a rehearing. The motion was denied February 21, 1905, and the following opinion was filed:

CASSODAY, C. J. The fifth subdivision of the opinion filed in this case is not as explicit as it should have been. It seems to have misled counsel on both sides. This may be the result of a failure to appreciate that what was said in that portion of the opinion was by way of answering the contention that the plaintiff's right to damages was not preserved by sec. 1210e, Stats. 1898, as amended by ch. 354, Laws of 1903, "nor by the city charter," the "provisions" of which were "to be considered in connection with the statutes mentioned."

The several provisions of the charter quoted in the opinion were merely to indicate the general scope and statutory policy as to benefits and damages to the abutting lotowner when the city had proceeded regularly as prescribed by the statutes. The statement in the opinion that "neither the charter nor the statute attempts to deprive the lotowner of any damages in excess of the benefits" does not mean that it confers any right to such damages which did not exist at the time of the enactment of ch. 354, Laws of 1903. Certainly none are given either by statute or common law in case of original grading done lawfully and regularly. In this case the city did not proceed regularly, as prescribed by law, and hence for that reason became liable for the consequential damages proximately caused by the improvement. *Drummond v. Eau Claire,* 85 Wis. 556, 55 N. W. 1028; *Jorgenson v. Superior,* 111 Wis. 561, 87 N. W. 565; *Friedrich v. Milwaukee,* 114 Wis. 304, 90 N. W. 174; *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 452, and cases there cited; *Damkoehler v. Milwaukee, ante,* p. 144, 101 N. W. 707. The plaintiff's right to such damages could not be taken away by the subsequent amendment of sec. 1210e, Stats. 1898, by ch. 354, Laws of 1903, although it could provide for a reassessment of the amount of benefits secured to the lotowner, and which he ought to pay to the city. If, when so ascertained, they are less than the legal damages to which the plaintiff is entitled, the ward funds of the ward in which the improvement is made are clearly liable for the excess. Sec. 7, ch. VII, Milwaukee Charter. Counsel contends that there are no benefits in this case, but that is a question to be determined in such reassessment proceedings prescribed in sec. 1210e, Stats. 1898, as amended by ch. 354, Laws of 1903. Of course, the mandate is to be construed as referring to this opinion as well as to the original.

KERWIN, J., took no part in the decision of this case.