DAHLMAN and another, Respondents, vs. CITY OF MILWAUKEE, Appellant.

*January 8—April 30, 1907.*

(1–4) *Municipal corporations: Improvements: Invalid assessments: Reassessment: Statutes construed: Milwaukee: Constitutional law: Vested rights: Damages from grading street: Taking of land for public use.* (5, 6) *Appeal: Directing judgment below: Amendment of pleading.*

1. In sec. 1210*d*, Stats. (Supp. 1906; Laws of 1901, ch. 9)—providing that in all cases where the invalidity of a special assessment for improvements in any city is caused by reason of the work hav-

ing been done "without authority of law *or* by the failure of the common council to pass a valid ordinance adopting" any part or parts of ch. 40*a*, Stats. (1898), no new assessment shall be made until after the due passage of an ordinance adopting the essential provisions of said chapter relating to city improvements,— the word *or* should be construed as if it were *and;* and the adoption of any part of ch. 40*a* is prerequisite to a reassessment only when the original lack of authority was by reason of a failure to adopt such provisions.

2. So construed the section is applicable to all cities in the state, including Milwaukee.

3. The substitution (by ch. 354, Laws of 1903) of a remedy by reassessment in place of an action for damages for the grading of a street where such grading is illegal merely because the previous assessment of benefits and damages was invalid, was within the power of the legislature. No vested right was thereby taken away, since there is no constitutional or common-law right to recover damages for the authorized grading of a street by a city when there is no negligence in the act; and it was competent for the legislature to provide that a valid assessment should no longer be a condition precedent to the legality of the grading.

4. Where a substantial part of an adjoining owner's land falls into the street by reason of the removal of its lateral support in the course of grading there is a taking of the soil for public purposes, for which the owner is entitled to recover at least nominal damages. An assessment, in the grading proceedings, of the benefits and damages accruing from the work does not cover such a taking.

5. On reversing the judgment of the trial court, if it appear that the case was fully tried and that there is no possibility of a material change, upon a new trial, in the facts proven, the supreme court will direct the entry of judgment.

6. When a case is ready for final disposition after full trial, the supreme court will not remit it with leave to make application to the trial court to set up a new cause of action or new defense, unless there is, at least, a fairly persuasive showing on the merits and it is also made to appear that the failure to present the new cause of action or defense in the first instance was not due to mere negligence.

Appeal from a judgment of the circuit court for Milwaukee county: J. C. Ludwig, Circuit Judge. *Reversed.*

For the appellant there was a brief by *John T. Kelly,* city

Dahlman v. Milwaukee, 131 Wis. 427.

attorney, and *Clinton G. Price,* assistant city attorney, of
counsel, and oral argument by *Mr. Price.*

For the respondents there was a brief by *C. H. Hamilton*
and *Howard Van Wyck,* and oral argument by *Mr. Van
Wyck.*

The following opinion was filed January 29, 1907:

WINSLOW, J.   This is an action at law commenced in Oc-
tober, 1903, to recover damages for the cutting down of a
street adjoining plaintiffs' land in the city of *Milwaukee* in
the year 1903 on the ground that the assessment of benefits
and damages was void.   After its commencement and before·
trial the plaintiffs commenced an action in equity against the·
city and the contractor to restrain the collection of the assess-
ment of benefits and cancel the certificate, in which latter ac-
tion an interlocutory judgment ordering a reassessment was·
rendered, a reassessment was had which was held valid, and
final judgment was rendered thereon, from which judgment
no appeal has been taken.   After the rendition of judgment
in the equitable action the present action was brought to trial·
and a special verdict was rendered finding (1) that plaintiffs'
land was depreciated in value by the grading; (2) that the·
difference in its value immediately before and immediately
after the grading without considering any benefits resulting·
therefrom was $3,975; (3) that there was no depreciation re-
sulting from subsidence of the soil.   Judgment was rendered·
on this verdict for the plaintiffs for the damages found by the
jury, and the defendant appeals.

The defendant moved at the conclusion of the evidence that
a verdict in its favor be directed, and excepted to the overrul-·
ing of the motion, and this exception fairly raises the ques-
tion suggested in the case of *Pabst B. Co. v. Milwaukee,* 126·
Wis. 110, 105 N. W. 563, namely, the question of the effect
of the reassessment statutes upon an action for damages for
the grading of a street when the grading is claimed to have·

been illegal by reason of a defective assessment of benefits and damages.

To properly answer this question a brief consideration of the principles upon which such actions as the present have been sustained, prior to the passage of the reassessment laws, will be helpful. The mere changing of the actual surface of a street by a municipal corporation is not a taking of the private property of an adjoining owner for public use, and hence not within the constitutional provision requiring compensation to be made. *Harrison v. Milwaukee Co.* 51 Wis. 645, 8 N. W. 731. If such change be made under authority of law and with reasonable skill and care, there is no liability for damages in the absence of an express statute giving damages. *Dore v. Milwaukee,* 42 Wis. 108; *Harrison v. Milwaukee Co., supra; Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039. If, however, the law authorizes such change only in a certain manner and after the taking of certain definite prescribed steps such as the previous assessment of benefits and damages, the rule has been that the failure to take any substantial prescribed step would render the city liable in an action at law for damages thereby resulting to the adjoining lots. *Crossett v. Janesville,* 28 Wis. 420; *Dore v. Milwaukee, supra; Meinzer v. Racine,* 68 Wis. 241, 32 N. W. 139; *Colclough v. Milwaukee, supra; Drummond v. Eau Claire,* 85 Wis. 556, 55 N. W. 1028. The effect of these rulings was that in such a case as the present full damages could be recovered in the action at law, and the assessment of benefits could be set aside in equity. In this situation, and evidently with the view of obviating some, at least, of the obvious injustice resulting from these principles, the legislature passed ch. 262, Laws of 1897 (subsequently incorporated with some changes in the Statutes of 1898 as secs. 1210*d,* 1210*e,* and 1210*f*).

The first of these sections provided, in substance, that where certain specified street improvements (including grad-

ing) may be made in any city and the special assessment made therefor is invalid either (1) for failure to make a proper assessment of benefits and damages, or (2) failure to observe any provision of law, or (3) because of any act or defect in the proceeding on which the assessment is based, or (4) because of any unauthorized provision in the contract tending to increase the contract price of the work, the city authorities shall proceed to make a new assessment. The section further provided for an appeal by the property owner, for the issuance of a new certificate in place of the invalid certificate, and for the payment to the certificate holder of the excess of the invalid certificate over the new certificate out of the proper fund. This section was held constitutional and applied to the city of *Milwaukee* in the case of *Sanderson v. Herman,* 108 Wis. 662, 84 N. W. 890, 85 N. W. 141. By ch. 9, Laws of 1901, this section was amended so as to provide for a reassessment where the original assessment is invalid (1) because the work has been done without authority of law, or (2) for failure to make a proper assessment of benefits and damages, or (3) for failure to observe any provision of law either in adopting any part of ch. 40a of the Statutes of 1898 or otherwise, or (4) because of any act or defect in the proceedings on which the assessment is based, or (5) because of the insertion of any unauthorized provision in the contract for doing the work. This chapter contained other detail amendments not important to the present discussion, and closed with a new provision to the effect that, when the special assessment is invalid by reason of the work having been done "without authority of law or by the failure of the common council to pass a valid ordinance adopting any part or parts of said ch. 40a," no new assessment shall be made until after the due passage of an ordinance adopting the essential provisions of said chapter relating to city improvements, after which the new assessment shall be as effectual as if made before the doing of the work. By ch. 19, Laws of 1901, it was further pro-

vided that no new assessment should be made after the expiration of three years from the time the original assessment was set aside. The section as thus amended was held valid in a case where the defect consisted of a failure to adopt all the essential provisions of ch. 40a, in the case of *Schinlgen v. La Crosse,* 117 Wis. 158, 94 N. W. 84. By ch. 276, Laws of 1903, the section was again amended by making it applicable to a case where the assessment is invalid because the contract for the work is made with a foreign corporation which has not complied with the provisions of sec. 1770b, Stats. (1898). Some further detail amendments were made by this act which are not material here. It is proper to note, however, that in rewriting that part of the section providing that the excess in amount of the *invalid* assessment certificate over the new certificate, if any, should be paid out of the proper fund, the word *valid* was erroneously inserted in place of the word *invalid.* The error is so palpable as hardly to justify notice. The word *valid* must be read *invalid,* otherwise the provision becomes worse than meaningless.

It is claimed, however, that the section as it now stands does not apply to the present case or to any case except one where before the reassessment the city has adopted that part of the general city charter law—ch. 40a, Stats. (1898)—relating to city improvements. This claim is based upon the provision first appearing in ch. 9, Laws of 1901, to the effect that "in all cases" where the invalidity of the assessment is caused by reason of the work having been done "without authority of law, or by failure of the common council" to pass a valid ordinance adopting any part or parts of the general city charter law, no new assessments shall be made until the provisions of the general charter law relating to city improvements have been duly adopted. The proposition seems to be seriously urged, but we cannot consider it sound. This clause was put into the law at the same time that the fact of failure to adopt a part of the general charter was added to the law as

an additional defect which might be cured by reassessment; the two clauses went together, evidently with the idea that where an attempt had been made to make an assessment according to the provisions of the general charter under the mistaken idea that the city had adopted such provisions, there could not be an effective reassessment until the city, by adopting the provisions of the general charter, had clothed itself with power to make an original assessment. If the original assessment was void because of lack of power, any reassessment made before the power was acquired must be void for the same reason.. This view of the legislative idea is further reinforced by the fact that in the very opening sentence of the section it is made applicable to "any city," just as it was when originally passed in 1897. Again, the act covers a number of defects not connected in any way with a failure to properly adopt the city improvement provisions of the general charter. Is it reasonable to suppose that, where the assessment is void because of a provision in the contract not authorized by law which increased the cost, the legislature intended to compel a city which has ample provisions for such assessments in its special charter to adopt the general charter before it could reassess? Clearly the remedy in such case would have no relevancy to the defect to be cured. Really the only ground upon which the claim is based is the fact that the clause in question provides that, where the assessment is void because the work was done "without authority of law or" by failure to adopt the provisions of the general charter, such provisions must be adopted before a reassessment is made. The words "without authority of law" are said to cover every defect, and hence the clause covers every case. The manifest incongruity, if not absurdity, of such a meaning, however, justifies resort to rules of construction. No absurd intent should be attributed to the legislature if it can be avoided. The rule is familiar that the word "or" may be construed as if it were "and" under such circumstances. We think the

rule should be applied here, and, when it is applied and the whole act is read together, and the evils intended to be obviated are considered, we entertain no doubt that the words "without authority of law" in this provision refer simply to a lack of authority by reason of failure to adopt the provisions of the general charter, and that only in such cases is it necessary that such provisions should be adopted before the reassessment.

Secs. 1210e and 1210f, Stats. (1898), are really supplementary sections added to sec. 1210d for the purpose of rounding out the reassessment system, and providing for its application after an action has been brought to set aside the assessment. Sec. 1210e provides that in such case, if the court determines that the assessment is invalid by reason of a defective assessment of benefits and damages, the proceedings shall be stayed and a reassessment ordered and made, which the plaintiff may contest until a valid reassessment has been made, when the plaintiff is required to pay into court as a condition of relief the amount of benefits which he should justly pay. Sec. 1210f provides that in any action to set aside an assessment on other grounds than those affecting the validity of the assessment of benefits and damages, if the assessment be held void the court shall determine the amount which the plaintiff justly should pay as a condition of relief. There have been amendments to these sections by ch. 354, Laws of 1903, and ch. 294, Laws of 1905, and a new section entitled 1210ee has been added by the last-named act. None of the changes made are material upon the present question except the change in sec. 1210e, which provides that, in an action at law to recover damages arising from failure to make a proper assessment or from failure to observe any provision of law, a reassessment of damages and benefits shall be made as well as in an action in equity to set aside the assessment and with like effect on the action. This amendment was made by ch. 354, Laws of 1903, published May 25, 1903. Here was mani-

fested very clearly the legislative intent to reverse the rule
that damages for the grading may be recovered at law solely
because the original assessment of benefits and damages is
shown to have been invalid, and to substitute for such legal
action the remedy by reassessment after the work is done.
Has the legislature power so to provide? It is said that it
has not, because the act of grading was illegal when done,
and the right to recover damages therefor became a vested
right which the legislature could not take away. The argu-
ment seems strong, but is in our judgment fallacious. When
the defect in the proceedings is simply a failure to make a
valid assessment, the illegality of the act of grading arises
simply from the fact that the law has made a valid assess-
ment a condition precedent to the grading. The legislature
could with equal legality have provided in the first instance
that the grading should be done first and the assessments of
benefits and damages made afterwards. This results be-
cause, as we have seen, there is no constitutional or com-
mon-law right to recover damages for the authorized grad-
ing of a street by a municipal corporation when there is no
negligence in the act. Suppose that a city charter provided
that the assessment of benefits and damages might be made
either before the work was done or afterwards, at the will
of the council, could it be claimed that such provisions were
invalid or that, because the assessment was not made before
the grading was done, a liability for damages was incurred?
We think not. This is practically the situation under the
reassessment statutes which now exist and existed at the
time the proceedings for the grading in question were com-
menced. The legislature now says to the city, you may grade
the street, making an assessment of the benefits and damages
first, but, if such assessment is not properly made, you may
make a proper one after the work is done with the same ef-
fect. By these provisions it seems to us certain that it has
effectually removed a valid assessment as a condition prece-

dent to the legality of the grading. It has provided that there must be a valid assessment at some time during the proceedings, but whether before or after the grading is done is immaterial, and so the act of grading, though done before the valid assessment is made, loses its illegal character and does not in fact become illegal until the time has elapsed within which a valid assessment can be made.

This question was not raised or considered in the cases of *Jorgenson v. Superior,* 111 Wis. 561, 87 N. W. 565, and *Friedrich v. Milwaukee,* 114 Wis. 304, 90 N. W. 174, where actions for consequential damages were sustained on account of defects in the assessment of benefits and damages, and these cases, so far as they conflict with the results now reached, must be considered as overruled. There are other cases where the principle that damages may be recovered at law where the assessment was illegal has been referred to approvingly, such as *Haubner v. Milwaukee,* 124 Wis. 153, 101 N. W. 930, 102 N. W. 578, but such references are now disapproved.

It follows that the defendant's motion for a directed verdict should have been granted.

It appearing that the case was fully tried and that there is no possibility of a material change in the facts proven upon a new trial, judgment for the defendant will be ordered.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the defendant dismissing the complaint.

Upon a motion for a rehearing there was a brief for the respondents by *C. H. Hamilton,* and a brief for the appellant signed by *John T. Kelly,* city attorney, and *Clinton G. Price,* of counsel.

The following opinion was filed April 30, 1907:

Winslow, J. The respondent moves for a rehearing in this case upon three grounds which will be briefly considered.

1. It is forcibly argued that the court was wrong in holding that sec. 1210*d,* Stats. (1898), as amended by ch. 9, Laws of 1901, applies to the city of *Milwaukee.* We have again examined the question in the light of the new considerations now urged, and we feel entirely satisfied with the correctness of the original decision upon this point; hence the question will not be reopened.

2. It is urged that it appears by the defendant's answer that the grade of the street was not fixed by ordinance until November 20, 1902, which was after the actual grading had been ordered to be done, and hence that there was neither jurisdiction on the part of the city council to order the grading to be done nor jurisdiction on the part of the court to order a reassessment. This subject was briefly mentioned in the original brief of respondents, but was overlooked in the opinion. Reference to the pleadings shows that in the complaint it was expressly charged that the city fixed the grade of the street by ordinances adopted during the years 1901, 1902, and 1903, and that the resolution by which the proceedings for actually grading the streets were initiated was introduced into the common council March 10, 1902, and adopted May 5, 1902. There was no charge in the complaint that the proceedings were irregular or illegal on account of any failure to previously fix the grade, but the sole claim made was that the assessment was void because arbitrarily made and because there was a total failure to consider or assess any damages. There was an allegation in the answer that the first grade of the street was fixed November 20, 1902, which would be after the proceedings for grading had been commenced; but it was further alleged in the same connection that whatever grading was done in front of the plaintiffs' premises was done for the purpose of conforming the street to said established grade. Upon the argument of the case it was claimed that this date was a clerical error and should have been November 20, 1900. However this may be, it

clearly appears that no claim of illegality or irregularity in the grading proceedings on account of failure to properly establish the grade was ever made in this case until it reached this court. The case was fought through the trial court upon the assumption that the grade was established by timely action of the common council, as the complaint in effect states. No attention was paid to the allegation in the answer that the grade was first established in November, 1902, or, if attention was paid thereto, it seems to have been considered immaterial.

It is now stated by respondents' counsel that since the prior argument sufficient facts have come to his notice to warrant him in asserting that no *valid* ordinance establishing the grade of the street has ever been passed by the common council, and he desires leave to amend his complaint so as to allege this fact and obtain a new trial on this new issue. It will be noticed that he does not claim that no ordinance was attempted to be passed or that the date of November 20, 1902, is the correct date, but simply that no valid ordinance was ever passed. It is only in exceptional cases that this court will remit a case which is ready for final disposition after full trial, and grant leave to make application to the trial court to set up new causes of action or new defenses making substantially another case. There must be a fairly persuasive showing on the merits, and it should also appear that the failure to present the new cause of action or defense is not attributable to mere negligence. *Wis. M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777. We do not think such a case is here presented.

3. It was an undisputed fact in the case that by reason of the grading of the street the soil of plaintiffs' premises was left unsupported on the margin of the street, and that considerable quantities of the soil fell down into the street; and the jury found in answer to the third question that the

subsidence of the soil caused no depreciation in the value of the premises. It is now claimed by the respondents that this subsidence of the soil constitutes a taking of property, and that the plaintiffs are in any event entitled to a judgment for nominal damages and costs, irrespective of all other questions. *Damkoehler v. Milwaukee,* 124 Wis. 144, 101 N. W. 706. This court has consistently and frequently held that, in the absence of express statute, a city is not liable for consequential damages to an adjoining property owner resulting from the lawful change of grade of a street, unless the work be negligently done and injury result from such negligence. *Harrison v. Milwaukee Co.* 51 Wis. 645, 8 N. W. 731; *Smith v. Eau Claire,* 78 Wis. 547, 47 N. W. 830; *Colclough v. Milwaukee,* 92 Wis. 182, 65 N. W. 1039. This is because the mere changing of the grade of the street is not considered a taking of property within the meaning of the constitution. An instance of recovery on the ground of negligence in doing the work will be found in *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 448, where in grading up a street the dirt was allowed to extend over onto an adjoining proprietor's land.

There is a sharp conflict in the authorities upon the question whether a property owner is entitled as against the city to the lateral support of the soil. There is much authority in support of the proposition that no such right exists, and Mr. Dillon in his work on Municipal Corporations (4th. ed. §§ 990, 991) so states the rule. There is also much authority to the contrary. 2 Abbott, Mun. Corp. § 819; Elliott, Roads & Streets (2d ed.) § 205. This court upon full consideration of the subject in the *Damkoehler Case* adopted the latter doctrine as the one best calculated to do justice, on the ground that, where a substantial part of the adjoining owner's land falls into the street by reason of the removal of its lateral support in the course of grading, there was a

taking of the soil for public purposes and not a mere consequential damage. To the authorities in support of this rule cited in that case may be added *Parke v. Seattle,* 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 20 L. R. A. 68. We shall not rediscuss the question here. It must be considered as settled.

Such being the law, it appears clearly that there has been a taking of private property here for public use, for which the plaintiffs are entitled to recover nominal damages. The assessment of benefits and damages does not cover such taking, for the plain reason that such assessment is only designed for the purpose of measuring the benefits and damages resulting from a lawful exercise of the power to grade, not for assessing the value of property taken for public use. Although there was no actual damage resulting from the taking, the plaintiffs were entitled to recover nominal damages for the invasion of their constitutional rights, and this would carry costs. The judgment for costs in favor of the plaintiffs should therefore have been allowed to stand.

*By the Court.*—The motion for a rehearing is denied without costs, and the mandate herein is changed so as to read as follows: The judgment is modified by reducing the amount thereof to the sum of $124.31, and as so modified the same is affirmed, with costs in this court to the appellant.