SCHWARTZ and others, Respondents, v. EVANGELICAL DEACONESS SOCIETY OF WISCONSIN, Appellant.

*No. 176. Argued March 4, 1970.—Decided March 31, 1970.* (Also reported in 175 N. W. 2d 225.)

434

For the appellant there was a brief by *Michael, Best & Friedrich,* attorneys, and *Herman E. Friedrich* and

*Thomas E. Obenberger* of counsel, all of Milwaukee, and oral argument by *Herman E. Friedrich.*

For the respondents there was a brief by *Lorinczi & Weiss,* attorneys, and *Robert K. Steuer* of counsel, all of Milwaukee, and oral argumnt by *Mr. Steuer.*

ROBERT W. HANSEN, J.    The basic disagreement between the parties here is as to the exact nature of the legal rights created by the agreement between them, dated May 29, 1964, and attached to plaintiffs' complaint as Exhibit A.

The plaintiffs assert that such agreement is a conveyance, and the interest conveyed an easement.

The defendant asserts that the agreement is an executory contract, with the rights created being either a license or contract rights.

If an easement was created, the contract defenses asserted by defendant, such as absence of consideration or lack of mutuality, are inapplicable. If a license or contract rights were created, the defendant has the right to plead and prove such contract defenses in a suit for specific performance.

Authorities agree that the distinction between a conveyance granting an easement and a contract granting a license or contract right as applied to real estate is ". . . often very subtle and difficult to discern." [1] It is so here. For the meaning of the term, easement, we go to a very early Wisconsin case,[2] giving a definition that has not been changed since 1850 when it was written, and that is substantially identical with the definitions adopted throughout the country. It reads:

"An easement . . . is a liberty, privilege or advantage in land, without profit, and existing distinct from the ownership of the soil; and it has appeared also, that a claim for an easement must be founded upon a deed or

[1] 28 C. J. S., *Easements,* p. 627, sec. 2 (b).

[2] *Hazelton v. Putnam* (1850), 3 Pin. 107, 3 Chand. 117.

writing, or upon prescription, which supposes one. It is a permanent interest in another's land, with a right to enjoy it fully and without obstruction. . . ." [3]

In seeking to distinguish such easement from what is no more than a license or contractual right to use the land of another, we find most descriptive of the distinction the following definition:

"A license in real property is defined as a personal, revocable, and unassignable privilege, conferred either by writing or parol, to do one or more acts on land without possessing any interest therein. Indeed, the distinguishing characteristics of a license in land are that it gives no interest in the land and that it may rest in parol. . . . Accordingly, a license is chiefly distinguishable from an easement in that an easement implies an interest in land, which ordinarily is created by grant, and is permanent. . . ." [4]

These two definitions should illustrate how close is the question of whether an agreement to park cars on another's property represents an easement conveyed or a license or right contractually provided for. The distinction is not a matter of the type or quantity of use since the use granted by license or contract may be broader or greater than that granted by conveyance of an easement. An easement, however, is a permanent interest in the land of another, with the right to enjoy it fully and without obstruction for the period of the easement. A license or contract right is a privilege to do one or more acts on the land of another without possessing an actual land

[3] *Id.* at page 115. *See also: Polebitzke v. John Week Lumber Co.* (1914), 157 Wis. 377, 381, 147 N. W. 703; *Union Falls Power Co. v. Marinette County* (1941), 238 Wis. 134, 138, 298 N. W. 598; *Colson v. Salzman* (1956), 272 Wis. 397, 75 N. W. 2d 421; *Town of Menasha v. City of Menasha* (1969), 42 Wis. 2d 719, 727, 168 N. W. 2d 161.

[4] 25 Am. Jur. 2d, *Easements and Licenses,* pp. 525, 526, sec. 123. *See also: Hazelton v. Putnam, supra; Huber v. Stark* (1905), 124 Wis. 359, 365, 102 N. W. 12; *Vicker v. Byrne* (1914), 155 Wis. 281, 285, 143 N. W. 186.

interest. Into which of these categories does the agreement here, granting a right to park up to 10 cars, fall? The answer, as we see it, requires a review and consideration of the entire agreement that is marked plaintiffs' Exhibit A, not just one paragraph in it.

The entire agreement deals solely with the right of plaintiffs to park up to 10 automobiles on property owned or "made available" by defendant. As to the place of such parking, paragraph one of the agreement applies, providing in pertinent part:

"1. Parties of the first part, or persons designated by them, who are occupants of the building located on Parcel A [557 North 17th Street] are hereby *granted the right to park up to ten automobiles* without restrictions as to the time or hours for parking *on the area located on the east side* of Parcel B [542–556 North 18th Street] . . . This right shall continue *until such time as construction is commenced on Parcel B or such conditions beyond the control of second party as aforesaid exist which make it impossible to park vehicles as aforesaid. . . .*" (Emphasis supplied.)

Whenever construction is commenced on the designated parking area, or when conditions beyond the control of defendant "make it impossible to park vehicles" in such designated area, paragraph 2 of the agreement becomes operative. It provides, in pertinent part:

"2. *When the parking of vehicles becomes impossible because of such construction or the existence of such conditions,* parties of the second part shall *make available an alternate parking site or sites* to replace the eastern section of Parcel B. *Such alternate site or sites shall be within three hundred (300) feet of the westerly line of Parcel A* [557 North 17th Street] . . . ." (Emphasis supplied.)

The apparent purpose of the two paragraphs is to assure parking spaces nearby for up to 10 automobiles of occupants of the apartment house at 557 North 17th Street. In fact, the agreement is to terminate if ". . .

the existing building on Parcel A [557 North 17th
Street] is no longer located on Parcel A." Initially, the
designated parking space for such automobiles is Parcel
B [542–556 North 18th Street], but such designation
could be, at the option of defendant, for no more than a
few hours, days or weeks. When the defendant elects to
commence construction on such parcel, the place where
the cars are to be parked shifts. To where does it shift?
Not to any designated specific area. Under the agree-
ment the defendant is to "make available" an "alternate
site or sites" to be "within 300 feet" of the westerly line
of the property on which the apartment building is situ-
ated. So even the idea of a mobile or piggy-back ease-
ment, starting on one plot of ground and shifting, upon
the happening of certain contingencies, to another loca-
tion, would not fit the arrangement outlined. There is no
successor site or sites to which the dispossessed easement
could shift. Clearly paragraph 2 obligates defendant to
no more than making available parking places some-
where within a 300-foot limit.

So a holding that the entire agreement is a conveyance
granting an easement results in one paragraph of the
agreement being found to be a conveyance, and the next
paragraph a contract requiring no more than space to be
made available. Such making fish out of one paragraph,
fowl out of the next, is not a reasonable interpretation of
the agreement, viewed in its entirety. Such a hybrid
result is not to be favored, particularly not where the dis-
tinction between conveyance and contract is, at best, nar-
row indeed. Considering the document as a whole, and
giving weight to the factor that the use for parking of a
portion of the 542–556 North 18th Street property can be
terminated at any time by the defendant by commencing
construction thereon, we hold it to be no more than a
contract initially providing a license to use a certain
area for parking purposes, with substitute space to be
made available if commencement of construction or con-

ditions beyond control make "impossible" parking in the area specified.

In reaching a contrary interpretation, the trial court stressed the form of the agreement and the form of its execution. Substance must take precedence over form. As one authority has stated:

". . . If the instrument or agreement in terms grants an interest in or right to use the land, even though it is called a license therein, it will, *according to the purpose and terms of the agreement,* constitute an easement, and not a license. On the other hand, if the instrument or agreement merely confers permission to do an act or a series of acts on the real property of the one conferring the privilege, it is a mere license and not an easement." [5] (Emphasis supplied.)

Since the right to park cars, initially on one parcel of land, subsequently perhaps somewhere else, is considered to grant a mere contract right or license, not an easement, the instrument becomes a contract or agreement, not a conveyance. The conclusive presumption as to consideration which is afforded to executed conveyances under seal [6] cannot be afforded to this instrument. The seal imports only a rebuttable presumption of considera- tion.[7] The trial court ruling that the instrument cannot be attacked on the basis of lack of consideration or lack of mutuality must be reversed. Defendant, on remand, is entitled to rebut the presumption of consideration created by the seal, and to assert contractual defenses such as lack of mutuality, indefiniteness, unenforceabili- ty, and incompleteness.

[5] 28 C. J. S., *Easements,* p. 627, sec. 2 (b).

[6] *Virkshus v. Virkshus* (1947), 250 Wis. 90, 93, 26 N. W. 2d 156; *Security Nat. Bank v. Cohen* (1969), 41 Wis. 2d 710, 719, 165 N. W. 2d 140.

[7] "A seal upon an executory instrument shall be received as only presumptive evidence of a sufficient consideration." Sec. 891.27, Stats. *See also: Security Nat. Bank v. Cohen, supra.*

Additionally, the trial court found the plaintiffs, as owners of the apartment building at 557 North 17th Street, to be the real parties in interest, rejecting the contention that the individual tenants whose cars were to be parked were such real parties in interest.[8] We agree with the trial court holding. The primary test in a determination of whether plaintiffs are the real parties in interest is the effect of the litigation upon the parties.[9] "The test of whether one is the real party in interest within the meaning of the statute is, Does he satisfy the call for the person who has the right to control and receive the fruits of the litigation?"[10] Here plaintiffs have the right to select which tenants are to have the parking privileges and such tenants have rights only through the plaintiffs and the agreement which grants certain rights or privileges to plaintiffs. Plaintiffs are the real parties in interest under these circumstances.

We have not dealt with the action of the trial court in denying plaintiffs' and defendant's motions for summary judgment, but rather with certain trial court rulings that sharply limited the issues that could be raised at the time of trial. As to the overruling of the summary judgment motions, the trial court has a broad discretionary power,[11] at least unless "it either incorrectly decides a legal

---

[8] Sec. 260.13, Stats., provides: "Every action must be prosecuted in the name of the real party in interest except as otherwise provided in section 260.15."

[9] " 'In ascertaining whether the plaintiff is the real party in interest, the primary and fundamental test to be applied is whether the prosecution of the action will save the defendant from further harassment or vexation at the hands of other claimants to the same demand. . . .' " *State ex rel. State Bar v. Bonded Collections* (1967), 36 Wis. 2d 643, 651, 154 N. W. 2d 250.

[10] *Gross v. Heckert* (1904), 120 Wis. 314, 320, 97 N. W. 952. *See also: Marshfield Clinic v. Doege* (1955), 269 Wis. 519, 523, 69 N. W. 2d 558.

[11] *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 162 N. W. 2d 626; *Cadden v. Milwaukee County* (1969), 44 Wis. 2d 341, 171 N. W. 2d

issue or it declines to decide a legal issue which is capable of resolution in a factual vacuum." [12] Only where there has been abuse or nonexercise of such broad discretion will an order overruling motions for summary judgment be reversed or disturbed.[13] So we affirm the trial court's denial of the summary judgment motions; concur in its finding plaintiffs to be the real parties in interest; reverse its holding that the agreement of May 29, 1964, was a conveyance creating an easement; and remand the matter for trial.

*By the Court.*—Order modified in accordance with this opinion, and, as modified, affirmed.

360; *Kemp v. Wisconsin Electric Power Co.* (1969), 44 Wis. 2d 571, 172 N. W. 2d 161.

[12] *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 435, 167 N. W. 2d 226.

[13] *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 166 N. W. 2d 191.