PUBLIC SERVICE CORPORATION, Respondent, v. MARATHON COUNTY, and others, Appellants.

*No. 75–184. Argued November 30, 1976.—*
*Decided January 18, 1977.*
(Also reported in 249 N. W. 2d 543.)

444

For the appellants the cause was argued by *E. Gordon Young*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondent there was a brief by *Foley & Lardner* and oral argument by *Allen W. Williams, Jr.*, all of Milwaukee.

BEILFUSS, C. J. The overriding issue is whether the private public utility has a sufficient interest in land to require payment of just compensation for the removal and replacement of its power lines.

Basic to the controversy is Art. I, sec. 13 of the Wisconsin Constitution, which states: "The property of no person shall be taken for public use without just compensation therefor." Several statutory sections must also be considered and they will be referred to below.

In 1950, the plaintiff, Wisconsin Public Service Corporation, pursuant to permits and authorization issued between 1919 and 1941 under sec. 86.16, Stats., erected overhead utility lines on the north side of a town road which lies between the Town of Kronenwetter Marathon County, and the Town of Knowlton, Portage County. These so-called permits were issued by the towns, the State Highway Commission and Marathon County.

In October, 1971, the county boards of Marathon and Portage Counties passed resolutions closing the town road to provide additional runway space for the Central Wisconsin Airport. The airport is owned jointly by the two counties. The Secretary of Transportation of the State of Wisconsin and the Division of Aeronautics of the State of Wisconsin are statutory agents of Marathon

and Portage Counties for the improvement of the airport.

■■ The 1919 agreement between the Town of Kronenwetter and the Wisconsin Valley Electric Company (the predecessor of the utility) was labeled a "Permit" and the granting clause spoke of a "franchise" or "permission." While a franchise is not a license, *State ex rel. Fairchild v. Wisconsin Automotive Trades Asso.*, 254 Wis. 398, 401, 37 N.W.2d 99, 100 (1949), it closely resembles, partakes of the nature of, and has many characteristics in common with a license, particularly in that it is not an interest in land.[1] This would seem to indicate that the parties did not intend to create an interest in land. But conversely the language of the agreement also provided that the permit could be assigned. Also, the 1941 agreement between the Town of Knowlton and the utility provided for assignment of the right to construct and maintain utility lines. In 1933 the utility, as successor in interest to the Wisconsin Valley Electric Company, acquired the rights which had been extended by prior "permits." As noted by the circuit court, this conduct indicates the parties did not intend these rights to be personal in nature. A license is unassignable. *Schwartz v. Evangelical Deaconess Society*, 46 Wis.2d 432, 438, 175 N.W.2d 225, 227 (1970). Assignability is a characteristic of rights in or connected with property.

■ In *Schwartz v. Evangelical Deaconess Society, supra,* the court dealt with the subtle distinction between a conveyance granting an easement and a contract granting a license. The court noted:

"An easement, however, is a permanent interest in the land of another, with the right to enjoy it fully and without obstruction for the period of the easement. A license or contract right is a privilege to do one or more acts on

[1] *See,* 47 Op. Atty. Gen. 267, 268 (1958); *see also,* Black's Law Dictionary 786 (4th ed. 1951).

the land of another without possessing an actual land interest." *Id.* at 438–39, 175 N.W.2d at 228.

" 'If anything more than a revocable license is created it is an *easement or interest in the land. . . .*' " *Van Camp v. Menominee Enterprises, Inc.*, 68 Wis.2d 332, 344, 228 N.W.2d 644, 670 (1975). (Emphasis added.)

The agreement extending rights for construction of utility lines was, in form, a permit, but, in substance, contained rights characteristic of a property interest. Because substance controls form, the permits must be held to have conveyed property interests.

██ Having determined that the utility had an interest in property, a second issue remains. That is, whether the requirement that the utility remove its power lines and relocate them below the runway was a taking within the meaning of Art. I, sec. 13, Wisconsin Constitution. The utility was forced to remove the lines and install them underground, but it retained its property interest. We deem this to be a close question because Wisconsin compensates only a taking, not mere damage to the property. *Howell Plaza, Inc. v. State Highway Comm.*, 66 Wis.2d 720, 725–26, 226 N.W.2d 185, 188 (1975); *More-Way North Corp. v. State Highway Comm.*, 44 Wis.2d 165, 170, 170 N.W.2d 749, 751 (1969).

In *Milwaukee E. R. & L. Co. v. Milwaukee*, 209 Wis. 656, 245 N.W. 856 (1932), the utility had constructed conduits and ducts within the street which interfered with the construction of the city's water mains. As in this case, the utility's power lines or conduits were lawfully installed. This court held that there was no question as to the city's right to construct the water mains. The court went on to note that "this does not mean that a city may compel a public utility lawfully occupying a street pursuant to authority granted by it to relocate its property without just compensation, in the absence

of a contract or agreement so requiring." *Id.* at 664, 245 N.W. at 858.

*Wisconsin Power & Light Co. v. Columbia County,* 3 Wis.2d 1, 87 N.W.2d 279 (1958), is helpful in analyzing the meaning of taking. The defendant county, in relocating a county road, deposited sand and gravel in a swamp close to one of plaintiff's utility towers. It was alleged that the deposits caused a readjustment of the swamp's balance which twisted the tower and rendered it useless. The court noted there was a fine line between a taking and causing mere consequential damage. It did not attempt "to locate precisely the line between situations on the one hand where damage to property constitutes a taking for public use for which the constitution requires just compensation to be paid, and those other situations in which mere damage to property by a governmental agency, even though approaching destruction, is not a taking in the constitutional sense." *Id.* at 7, 87 N.W.2d at 282.

In concluding there was no taking, the court gave weight to the following facts:

". . . the tower had no utility, direct or indirect, to the highway project, that the county did not need or desire the tower or the land on which it rested and did not intend to acquire or affect either the tower or the land, that the public obtained no benefit from injuring it. . . ." *Id.*

In this case the facts are the opposite. The removal of the power lines was important in the overall plan of enlarging the airport; the county needed the land on which the lines rested; it intended to affect the power lines; the removal of the lines was intentional, not accidental; the public benefited from the enlarged airport which necessitated the removal of the power lines.

*Just v. Marinette County,* 56 Wis.2d 7, 201 N.W.2d 761 (1972), is a recent case which dealt at length with the

difference between a taking and a reasonable exercise of the police power. The court stated:

> " ' . . . it may be said that the state takes property by eminent domain because it is useful to the public, and under the police power because it is harmful. . . . From this results the difference between the power of eminent domain and the police power, that the former recognizes a right to compensation, while the latter on principle does not.' " *Id.* at 16, 201 N.W.2d at 767. *See also, Village of Sussex v. Dept. of Natural Resources,* 68 Wis.2d 187, 228 N.W.2d 173 (1975).

■ This case also borders the fine line between taking and mere damage or reasonable regulation under the police power. It could be argued that there was no taking, and because the utility retained its property interest there was only an exercise of the police power which merely required relocation of the power lines and is uncompensable. It also can be argued this case is very similar to *Milwaukee E. R. & L. Co., supra,* and conclude, as the court did there, that a taking for public use occurred which requires just compensation. Weighing the same facts that the court considered in *Wisconsin Power & Light Co., supra,* also leads to a conclusion that a taking has occurred. Here the forced removal was because it was useful to the public in that it facilitated enlargement of the airport. The wires were not removed because they harmed the public. The removal is more like a taking than the exercise of the police power. *See Just v. Marinette, supra.* Nor is this case an exercise of the police power in the change of grade in an existing highway. In this case the highway was closed and abandoned as a highway. From an examination of the cases we believe a taking occurred.

■ Sec. 114.12, Stats., provides that when a highway is vacated and closed, as was the case here, damages shall not be assessed against a county "except as may be

allowed in a particular condemnation action where the lands or rights in lands necessary for such airport are so acquired."[2] It seems that it is obvious that the legislature intended that a county acquire land or interest in land through purchase or condemnation. The title of this section is "Condemnation of lands for airports." The interpretation that this section intended property or property rights could be acquired by purchase or condemnation supports the conclusion that a compensable taking occurred.

Sec. 182.017 (5), Stats.,[3] places a six-year limit on the right of a landowner to proceed under ch. 32 when a

---

[2] "114.12 *Condemnation of lands for airports.* Any lands acquired, owned, controlled or occupied by such counties, cities, villages and towns for the purposes enumerated in s. 114.11 shall and are hereby declared to be acquired, owned, controlled and occupied for a public purpose, and as a matter of public necessity, and such cities, villages, towns or counties shall have the right to acquire property for such purpose or purposes under the power of eminent domain as and for a public necessity including property owned by other municipal corporations and political subdivisions and including any street, highway, park, parkway or alley, provided that no state trunk highway shall be so acquired without the prior consent of the highway commission. Whenever the county, city, village or town as the case may be shall own all land or access rights on both sides of such street, highway, park, parkway or alley, it may, within the limits where it has ownership or access rights on both sides, notwithstanding any other provisions of law, vacate and close such public way by resolution of the governing body of the county, city, village or town acquiring it and no damages shall be assessed against such county, city, village or town by reason of such closing, except as may be allowed in a particular condemnation action where the lands or rights in lands necessary for such airport are so acquired. If such closing shall leave any part of such street, highway, parkway or alley without access to another public street or highway, the county, town, city or village effecting such closing shall immediately provide such access at its expense."

[3] "182.017 *Transmission lines; privileges; damages.* . . . (5) *Limitation of Action.* The proceedings authorized in chapter 32 shall not be taken nor other action commenced against the cor-

utility has erected utility lines on property without compensating the landowner. Sec. 893.12[4] (formerly sec. 330.12) states that no presumption of a right to maintain a utility line shall arise from the lapse of time during which a utility line is maintained on or over a landowner's property.

The conflict between secs. 182.017(5) (formerly sec. 180.17(5)) and 893.12, Stats., was recognized in *Petersen v. Lake Superior District Power Co.*, 255 Wis. 584, 39 N.W.2d 706 (1949). The court held that sec. 182.017 (5) controlled because it was enacted subsequent to sec. 893.12. *Id.* at 587, 39 N.W.2d at 707. It also noted that even when the utility had permission to take possession of the property, the owner's exclusive legal remedy for compensation was pursuant to a ch. 32 proceeding. *Id.* Thus, under sec. 182.017(5), if the action is not brought by the landowner within six years of commencement of use of the land by the utility the landowner has no legal remedy.

The utility, relying on sec. 182.017(5), Stats., argues that because an action was not commenced within six years of its use of the land, it has "an absolute right . . . to remain on the land. . . ." This argument ignores sec. 114.12. This section was enacted subsequent to sec. 182.017(5); therefore under the reasoning of *Petersen, supra,* sec. 114.12 takes precedence over sec. 182.017(5) if there is a conflict. The six-year limitation of sec.

---

poration in respect to its rights to use or possess lands, unless begun within 6 years after the commencement of such use or possession."

[4] "893.12 *What use not adverse.* (1) No presumption of the right to maintain any wire or cable used for telegraph, telephone, electric light or any other electrical use or purpose whatever shall arise from the lapse of time during which the same has been or shall be attached to or extended over any building or land; nor shall any prescriptive right to maintain the same result from the continued maintenance thereof.

"(2) The mere use of a way over uninclosed land shall be presumed to be permissive and not adverse."

182.017 (5) does not apply when the condemnation action is pursuant to sec. 114.12. Under sec. 114.12 the county was entitled to force the utility to relocate its lines, but because the utility had a property interest it had to do so by condemnation.

We do not reach the question as to the measure of damages because the parties have stipulated the utility's damages were the cost of removal and relocation.

*By the Court.*—Judgment affirmed.