Debra M. Wikel, Plaintiff-Appellant,

v.

State of Wisconsin Department of Transportation,
Defendant-Respondent.

Court of Appeals

*No. 00–3215. Submitted on briefs July 6, 2001.—Decided
August 7, 2001.*

2001 WI App 214

(Also reported in 635 N.W.2d 213.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Robert L. Gordon* of *Weiss, Berzowski, Brady & Donahue, LLP*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Frank D. Remington*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. SCHUDSON, J. Debra M. Wikel appeals from the circuit court order dismissing her petition for inverse condemnation [1] against the Wisconsin Department of Transportation. She argues that the court erred in concluding that her petition failed to state a claim for inverse condemnation. Wikel is correct and, therefore, we reverse.

## I. BACKGROUND

¶ 2. Wikel brought a petition for inverse condemnation under WIS. STAT. § 32.10 (1997–98), which states, in relevant part:

> **Condemnation proceedings instituted by property owner.** If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. The petition shall describe the land, state the person against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the person against which the proceedings are instituted. . . . The petition shall be filed in the office of the clerk of the circuit court and thereupon the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the occupying person as defendant. The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so.

---

[1] "Inverse condemnation is a procedure where a property owner petitions the circuit court to institute condemnation proceedings." *Koskey v. Town of Bergen*, 2000 WI App 140, ¶ 1 n.1, 237 Wis. 2d 284, 614 N.W.2d 845, *review denied*, 2000 WI 121, 239 Wis. 2d 311, 619 N.W.2d 93.

Section 32.10 "is designed to protect property owners against the slothful actions of a condemnor which, having constructively taken an owner's property, is in no hurry to compensate the owner." *Maxey v. Redevelopment Auth. of Racine*, 94 Wis. 2d 375, 393, 288 N.W.2d 794 (1980).

¶ 3. According to Wikel's petition, the Department, in the course of planning State Trunk Highway 794 (known as the "Lake Parkway"), determined that a portion of the backyard of her residential property would be needed for construction of a retaining wall to prevent groundwater from entering the new highway. Accordingly, the Department condemned a five-foot strip of land at the back of her property, obtaining fee title to that strip, and also obtained three easements (from the new back border of Wikel's property, resulting from the Department's acquisition of the five-foot strip): a fifty-foot permanent limited easement for construction related to the highway's retaining wall; a ten-foot permanent limited easement for construction and maintenance of utility poles and lines; and a twenty-five foot temporary limited easement for construction of the retaining wall, and for construction and maintenance of temporary utility poles and lines. Wikel accepted the $4000 the Department awarded her for the acquisition of her property and the three easements.

¶ 4. Wikel's petition alleged that she accepted the award in reliance on the Department's representation that the construction "would be satisfactorily completed, with no damage to or alteration of [her property] beyond that specifically identified" by the Department in connection with the acquisition and the easements. The petition further alleged, however, that the construction caused "extensive cracks and other structural damages, including flooding damage" to the Wikel resi-

dence, rendering it "uninhabitable and unsaleable," and resulting in a "total, permanent taking" without just compensation.

¶ 5. The Department moved to dismiss Wikel's petition. The circuit court, in a brief oral decision, commented that the case was a "difficult" one in which its "natural sympathies . . . go with the home owner." The court stated that *Wisconsin Power & Light Co. v. Columbia County*, 3 Wis. 2d 1, 87 N.W.2d 279 (1958), "comes closest to supporting [Wikel's] petition" and "does include some language which is favorable to her" but, granting the Department's motion, concluded that "the kind of damage that is described in the petition does not rise to that level" envisioned as a taking by *Wisconsin Power*.

## II. DISCUSSION

¶ 6. The standard for reviewing whether a circuit court correctly dismissed a complaint was recently reiterated by the supreme court:

> "A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint." Whether the complaint states a claim for relief is a question of law which [an appellate court] reviews *de novo*. For purposes of review, we must accept the facts stated in the complaint, along with all reasonable inferences which may be drawn from them, as true. Unless it seems certain that no relief could be granted under any set of facts that the plaintiff could prove, dismissal of the complaint is improper.

*Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999) (citations omitted); *see also Wagner v. Dissing*, 141 Wis. 2d 931, 936, 416

N.W.2d 655 (Ct. App. 1987) (holding that because pleadings are to be liberally construed, court should grant motion to dismiss only when it is " 'clear that under no conditions can the plaintiff recover' ") (quoted source omitted).

¶ 7. The Department concedes that Wikel's petition "may certainly be read to complain that the State damaged [her] property," but contends that it should not be read to complain "that her home or her land were [sic] taken by the construction of the Lake Parkway." The Department emphasizes that Wikel "retains title to [her property] and no other person or thing occupies her home or her yard." The Department, therefore, tries to draw a distinction between the *taking* of Wikel's property (the five-foot strip of her backyard) and the *damaging* of her property (the alleged damages to her home).

¶ 8. The Department relies on the supreme court's declaration in *Wisconsin Power*:

[I]t is important to observe that while the constitutions of many states provide expressly that private property shall not be taken *or damaged* for public use without just compensation, that of Wisconsin provides only that "the property of no person shall be *taken* for public use without just compensation therefor" without mention of damage.

*Wis. Power*, 3 Wis. 2d at 6 (citations omitted). *Wisconsin Power*, however, actually supports Wikel's position.

¶ 9. In *Wisconsin Power*, the supreme court provided numerous examples of actions affecting property in an effort to explain the differences between situations "where damage to property constitutes a taking for public use for which the constitution requires just compensation to be paid," and situations "in which mere

631

damage to property by a governmental agency, even though approaching destruction, is not a taking in the constitutional sense." *Id.* at 5–7. While the supreme court declined to "locate precisely the line" between the two, *id.* at 7, the court did discuss certain criteria by which courts can discern the differences, all of which support Wikel's claim in this case: the Department "intended to invade or affect plaintiff's property," *see id.* at 4; "forces set in motion by [the Department] . . . damaged [Wikel's property] to an extent which destroyed its utility," *see id.*; Wikel had ownership interest in the land, *see id.*; title and possession of a portion of Wikel's land were appropriated by the Department, *see id.*; the acquisition of Wikel's land had "utility, direct or indirect, to the highway project," *see id.* at 7; and the public "obtained . . . benefit" from the land the Department acquired, *see id.*

¶ 10. Thus, as Wikel correctly argues, her circumstances are comparable to those of the plaintiff, an electrical utility company, in *Public Service Corp. v. Marathon County*, 75 Wis. 2d 442, 249 N.W.2d 543 (1977). There, the supreme court concluded that a compensable taking had occurred where the county, enlarging its airport, compelled the utility to remove overhead power lines and place them underground. The supreme court explained:

> The removal of the power lines was important in the overall plan of enlarging the airport; the county needed the land on which the lines rested; it intended to affect the power lines; the removal of the lines was intentional, not accidental; the public benefited from the enlarged airport which necessitated the removal of the power lines.

*Id.* at 448. Much the same could be said here. The five-foot strip and the easements were "important in the

overall plan" of building the Lake Parkway; the Department "needed the land" in Wikel's backyard; the Department "intended to affect" Wikel's land; the work on Wikel's land "was intentional, not accidental"; and "the public benefited from the [Lake Parkway] which necessitated" the acquisition of Wikel's property and the easements.

¶ 11. Still, the Department contends that Wikel's petition is insufficient because it fails to establish either that the government has occupied the alleged damaged property (her home), or that "the property is valueless or that a subsequent purchaser could make no other use of the property." The Department's contentions have no merit.

¶ 12. Article I, Section 13 of the Wisconsin Constitution provides, "The property of no person shall be taken for public use without just compensation therefor." "Land may be taken for public purposes, within the meaning of the constitutional provision, without actual occupancy or seizure by the taker." *Wis. Power*, 3 Wis. 2d at 4; *see also Eberle v. Dane County Bd. of Adjustment*, 227 Wis. 2d 609, 621, 595 N.W.2d 730 (1999) ("A 'taking' need not arise from an actual physical occupation of land by the government."); *Pub. Serv. Corp.*, 75 Wis. 2d at 449 (rejecting argument that no taking occurred because utility "retained its property interest").

¶ 13. The Department concedes that "[t]he difference between compensable damages and non[-]compensable damages depends upon the degree of residual usefulness or utility." In a puzzling argument, however, the Department asserts that Wikel's petition "does not state a claim of consequences so severe that the cause, the government's actions, constitute a taking

compensable under the law." But Wikel alleges that *the degree of residual usefulness or utility* was zero. What *consequences* could be more *severe* than loss of one's home?

¶ 14. The Department maintains, however, that Wikel has not shown that her land, even if uninhabitable, could not be used for some other purpose. Wikel replies that the property is "a single residential lot zoned for a single family dwelling." Although Wikel's petition does not refer to the zoning of South Ellen Street, where her home is located, it repeatedly refers to her "residence," the "residential properties on South Ellen Street," and the communication between the Department and the owners of the "Ellen Street Homes." That, in combination with Wikel's allegation that her property had been rendered "uninhabitable and unsaleable," leads to the logical inference that the property's only or primary use was residential. The Department's speculation that the property, even if uninhabitable as a result of the construction, could come to be used for some non-residential purpose, certainly does not undermine that inference or defeat Wikel's claim.

¶ 15. The Department also asserts that Wikel's petition offers nothing to show that her property was rendered truly uninhabitable and unsaleable, and that her petition is suspect given that it alleges that her home suffered damage more than one year after the highway construction was completed. This is the pleading stage, however; factual issues of damage and causation are properly deferred to the summary judgment and/or trial stage.

¶ 16. As even the Department's brief explains:

> Plaintiff's petition can be distilled to the following: before the State built the Lake Parkway she did not

have problems, but after the State built the Lake Parkway plaintiff's residence suffered from cracks and other structural damages, including flooding damage. Before the State built the Lake Parkway her property was habitable and saleable, but after the State built the Lake Parkway her[] home became uninhabitable and unsaleable.

Exactly. And Wikel's petition also claims that the State actually took part of her property and that the taking and the work related to that property caused the complete devaluation and, therefore, the "total, permanent taking" of her property. *See Wis. Power*, 3 Wis. 2d at 6 ("[D]estruction of property or such damage as to render it worthless may be a taking of the property, depending on the circumstances. . . .").

■

¶ 17. While the Department may maintain that it accomplished only a limited taking consisting of the five-foot-strip acquisition and the easements, and that it did not cause the consequential damages Wikel alleges, Wikel is entitled to the opportunity to prove her allegation that the Department's actions rendered her property "uninhabitable and unsaleable" and, therefore, constituted a "total, permanent taking." "When determining whether art. I, § 13 is triggered by factual allegations concerning a particular piece of property, the threshold inquiry is whether the property has been 'taken.' " *Eberle*, 227 Wis. 2d at 621. In this case, Wikel's petition pulls the trigger and, therefore, the inquiry must proceed.

*By the Court.*—Order reversed.