E-L ᴇɴᴛᴇʀᴘʀɪsᴇs, Iɴᴄ., Plaintiff-Respondent,

v.

Mɪʟᴡᴀᴜᴋᴇᴇ Mᴇᴛʀᴏᴘᴏʟɪᴛᴀɴ Sᴇᴡᴇʀᴀɢᴇ Dɪsᴛʀɪᴄᴛ, Defendant-Appellant.†

Court of Appeals

*No. 2008AP921. Submitted on briefs December 2, 2008. —Decided December 23, 2008.*

2009 WI App 15

(Also reported in 763 N.W.2d 231.)

---

† Petition to review granted 5/12/09.

---

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. McCabe, James H. Petersen* and *Lauri A. Rollings*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jerome R. Kerman* and *Joseph R. Cincotta* of *Kerkman & Dunn*, Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. The Milwaukee Metropolitan Sewerage District appeals a judgment entered on a jury verdict in favor of E-L Enterprises, Inc., that found the Sewerage District liable to E-L Enterprises under an inverse-condemnation theory for damage to E-L Enterprises's property as the result of the Sewerage District having drained groundwater from around the pilings supporting the building.[1] The Sewerage District contends that the requisites to inverse condemnation under both article I, section 13 of the Wisconsin Constitution and Wis. Stat. § 32.10 were not met. The Sewerage District also argues that the calculation of

---

[1] The Sewerage District's notice of appeal was filed on April 11, 2008. The final judgment was entered on April 15, 2008, "Nunc Pro Tunc to March 11, 2008." We have jurisdiction nevertheless. *See* Wis. Stat. § 808.04(8) ("If the record discloses that the judgment or order appealed from was entered after the notice of appeal or intent to appeal was filed, the notice shall be treated as filed after that entry and on the day of the entry.").

damages was erroneous and that the statute of limitations barred the action. We affirm.

## I.

¶ 2. This case has its beginnings in the Sewerage District's construction of a deep-tunnel storm-water system in Milwaukee County. As material to the issues in this case, the District hired a joint-venture entity, "Bowles Contracting, Inc. and Tomasini Contractors, Inc.," to do the actual work on the project that affected E-L Enterprises. The parties agree that the joint venture is no longer in business.

¶ 3. Part of the work in connection with the Sewerage District's deep-tunnel project required that the work area be kept dry. The jury found that this resulted in the draining of groundwater that was keeping the pilings of a building owned by E-L Enterprises sufficiently saturated to support the building. The jury also found that the "District's removal of groundwater from E-L's property [was] unreasonable," was "a taking," and caused E-L Enterprises's "building to settle." The trial court summed it up nicely in its written order denying the Sewerage District's post-verdict motions: "E-L persuaded the jury that the District took E-L's groundwater permanently, deliberately and for a public purpose and that E-L should be compensated for the lost groundwater and the accompanying loss in property value."

¶ 4. The Sewerage District does not dispute that there is sufficient evidence to support the jury's findings, other than its contention that there was no "taking" as a matter of law under either article I, section 13 of the Wisconsin Constitution or WIS. STAT. § 32.10. It also does not dispute that there was sufficient evi-

285

dence for the jury to find in its answers to the special-verdict questions under the trial court's instructions that the diversion of the water, what the jury found was a "taking," was deliberate, that the diversion benefited the public, and that the removal of the water was permanent.[2] We address the Sewerage District's legal contentions in turn.

## II.

¶ 5. This appeal presents issues of law, and although we have been assisted by the trial court's cogent analyses of the complex issues with which it had to deal, our review is *de novo. See Truttschel v. Martin*, 208 Wis. 2d 361, 364–365, 560 N.W.2d 315, 317 (Ct. App. 1997).

A. *Inverse condemnation.*

¶ 6. Article I, section 13 of the Wisconsin Constitution declares: "The property of no person shall be taken for public use without just compensation therefor." Where there has been a "taking" but the entity with condemnation power does not pay "just compensation," the property owner may seek so-called inverse condemnation under WIS. STAT. § 32.10, which, as material, provides:

> If any property has been occupied by a person possessing the power of condemnation and if the person has

---

[2] E-L Enterprises's brief asserts that the Sewerage District does not dispute that the evidence before the jury supports these findings. The District's reply brief does not contradict this assertion. Accordingly, we take it as given. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (matter not refuted deemed admitted).

not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. The petition shall describe the land, state the person against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the person against which the proceedings are instituted .... The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions of this subchapter assuming the plaintiff has received from the defendant a jurisdictional offer and has failed to accept the same and assuming the plaintiff is not questioning the right of the defendant to condemn the property so occupied.

The Sewerage District has the power to condemn "any real property situated in the state and all tenements, hereditaments and appurtenances belonging or in any way appertaining to, or in any interest, franchise, easement, right or privilege therein, that may be needed for the purpose of projecting, planning, constructing and maintaining the sewerage system, that may be needed for the collection, transmission or disposal of all sewage or drainage of the district." WIS. STAT. § 200.43(1).

¶ 7. In determining that the Sewerage District's removal of the groundwater supporting E-L Enterprises's building was a "taking," the jury applied the trial court's instructions:

A government agency commits a taking of property for which a court may order compensation if the following three elements are present: First, the tak-

ing must be deliberate, not accidental. Second, the property must be taken for some use that benefits the public. Third, the property must be taken permanently. If you are satisfied by the greater weight of the credible evidence, to a reasonable certainty that all three of these elements are present, you should answer [the "taking" question] yes.

The Sewerage District contends that as a matter of law its diversion of the groundwater was neither a "taking" under Wis. Const. art. I, § 13, nor an "occupation" under Wis. Stat. § 32.10. We disagree.

■■

¶ 8. The law in Wisconsin is settled that an entity with the power of condemnation may "occupy" land without physical entrance onto that land. Thus, for example, imposition of regulations that deprive a property owner of the use of his or her property is an "occupation." *Eberle v. Dane County Bd. of Adjustment*, 227 Wis. 2d 609, 621, 595 N.W.2d 730, 737 (1999) ("A 'taking' need not arise from an actual physical occupation of land by the government.") (regulatory taking). Further, there may be a taking when the entity with the power of condemnation does something outside of the affected property that adversely impacts the owner's use of that property. Thus, in *Wikel v. Department of Transportation*, 2001 WI App 214, 247 Wis. 2d 626, 635 N.W.2d 213, we held that a claim for inverse condemnation was stated when the plaintiff, Debra M. Wikel, complained that the construction of a roadway by the Department of Transportation "caused 'extensive cracks and other structural damages, including flooding damage' to the Wikel residence, rendering it 'uninhabitable and unsaleable,' and resulting in a 'total permanent taking' without just compensation," *id.*, 2001 WI

App 214, ¶¶ 4, 7–17, 247 Wis. 2d at 629–630, 631–635, 635 N.W.2d at 215, 216–218.

¶ 9. In a decision most analogous to what we have here, *Damkoehler v. City of Milwaukee*, 124 Wis. 144, 151, 101 N.W. 706, 708 (1904), held that the removal of a building's lateral support by the grading of a street was a compensable "taking . . . for public purposes" and, as characterized by *Dahlman v. City of Milwaukee*, 131 Wis. 427, 439–440, 111 N.W. 675, 677 (1907), "not a mere consequential damage" for which there would be no remedy. *Dahlman*, too, held that the removal of a building's lateral support by the grading of a street was a compensable "taking." *Id.*, 131 Wis. at 436–440, 111 N.W. at 676–677. Although it is true that "mere consequential damage to property resulting from governmental action is not a taking" under WIS. CONST. art. I, § 13, *Wisconsin Power & Light Co. v. Columbia County*, 3 Wis. 2d 1, 6, 87 N.W.2d 279, 281 (1958), the line between direct and consequential is less than sharp at the boundary, *id.*, 3 Wis. 2d at 7, 87 N.W.2d at 282 ("It is not presently necessary nor desirable to try to locate precisely the line between situations on the one hand where damage to property constitutes a taking for public use for which the constitution requires just compensation to be paid, and those other situations in which mere damage to property by a governmental agency, even though approaching destruction, is not a taking in the constitutional sense."). Nevertheless, *Wisconsin Power & Light* gives us guidance.

¶ 10. In *Wisconsin Power & Light*, the County relocated a county road and in the process dumped "a large amount of sand and gravel in the swamp adjacent to" Wisconsin Power & Light's electrical power line and close to one of its towers. *Id.*, 3 Wis. 2d at 3, 87 N.W.2d

at 280. The sand and gravel "sank and spread and extended under the surface of the swamp, thereby displacing the muck and peat so as to create mounds of earth eight to 10 feet high above the surface of the swamp under the power line" thus twisting and essentially destroying the tower. *Ibid.* In determining that the damage was not a taking under WIS. CONST. art. I, § 13, but was rather merely consequential damage, *Wisconsin Power & Light* made the following assessment of the facts before it:

> [T]he tower had no utility, direct or indirect, to the highway project, that the county did not need or desire the tower or the land on which it rested and did not intend to acquire or affect either the tower or the land, that the public obtained no benefit from injuring it, that the county had no reason to anticipate that damage would result from its acts, and that the injury to the tower was purely accidental. Whatever might be the significance of any of these facts standing alone, collectively they negative a taking in the constitutional sense. We think that for presently pertinent purposes, the case is substantially the same as if one of defendant's trucks hauling the sand and gravel had accidentally collided with and demolished one of the plaintiff's automobiles on the highway. In both cases there is damage, for which the county may or may not be liable in tort, depending on such factors as negligence and sovereign immunity; but plaintiff's property is not taken for public use within the meaning of sec. 13, art. I, Wis. Const.

*Wisconsin Power & Light,* 3 Wis. 2d at 7, 87 N.W.2d at 282. Here, in contrast, there was evidence before the jury that indicated that the Sewerage District was aware of a potential groundwater problem in connection with buildings near the project and, indeed, had directed its contractor to be careful to avoid damage to

those buildings as the result of "removal or disturbance of groundwater, including but not limited to claims for subsidence and the loss of structure support," and specified that any such damage "shall be sustained and borne by the Contractor at his expense." Thus, unlike the situation in *Wisconsin Power & Light*, the Sewerage District had "reason to anticipate that damage would result from its acts." *See ibid.* Further, unlike the situation in *Wisconsin Power & Light*, where "the public obtained no benefit from injuring" the tower, *ibid.*, draining the groundwater facilitated the Sewerage District's construction by safeguarding the workers and the work from water flowing into the tunnel being dug. Therefore, diversion of the groundwater had "utility," *see ibid.*, to the Sewerage District project. As with the situation in *Wikel*, where we discussed *Wisconsin Power & Light* at length, *Wikel*, 2001 WI App 214, ¶¶ 8–9, 247 Wis. 2d at 631–632, 635 N.W.2d at 216–217, this case is on the "taking" side of the line recognized by *Wisconsin Power & Light*. Significantly, *Wisconsin Power & Light*, upon which the Sewerage District rests much of its argument, specifically recognized the viability of the lateral-support cases: "[L]and may be 'taken' by . . . removing lateral support by reducing the grade of a street so that the adjoining owner's soil slides down into the street. *Dahlman v. City of Milwaukee*, 131 Wis. 427, 438–440, 110 N.W. 479, 111 N.W. 675." *Wisconsin Power & Light*, 3 Wis. 2d at 5, 87 N.W.2d at 281.

¶ 11. We see no logical basis to distinguish between the removal of soil providing lateral support and the diversion of groundwater performing essentially the same function—that is, supporting the structural integrity of a building like that owned by E-L Enterprises. This is especially true because Wisconsin law already recognizes that a property owner's interest in the

integrity of water may give rise to a protectable right. *See State v. Michels Pipeline Constr., Inc.*, 63 Wis. 2d 278, 302–303, 217 N.W.2d 339, 350–351 (1974) (recognizing a claim for nuisance when " '[t]he withdrawal of water causes unreasonable harm through lowering the water table or reducing artesian pressure' ") (quoted source omitted); *Price v. Marinette & Menominee Paper Co.*, 197 Wis. 25, 26–28, 221 N.W. 381, 381–382 (1928) (erection of dams across the Menominee river causing water " 'to overflow and seep through the banks of said river and onto the plaintiff's land' " making the land " 'flooded, water-soaked, spongy, and unfit for cultivation and dairying' " was a "taking" under the then-extant inverse-condemnation statute) (quoting from the complaint). Accordingly, we agree with the trial court that the jury's verdict supported E-L Enterprises's inverse-condemnation claims under WIS. CONST. art. I, § 13, and WIS. STAT. § 32.10.[3]

B. *Damages—the joint venture.*

■

¶ 12. E-L Enterprises sued both the Sewerage District and the joint venture's insurance company for the damages it claimed to have sustained as a result of the deep-tunnel project near its building. As we have seen, it sought inverse-condemnation damages from the

---

[3] The Sewerage District points out that during the proceedings, E-L Enterprises conceded that it did not have a claim under WIS. STAT. § 32.10, and that the trial court initially had that view as well. The Sewerage District contends that E-L Enterprises should be bound by that concession. A party's "concession" "in respect to a matter of law," however, "is binding upon neither the parties nor upon any court." *Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 168, 456 N.W.2d 788, 790 (1990).

District. It also asserted negligence and nuisance claims against the District. The latter two claims against the District were dismissed and E-L Enterprises has not appealed.

¶ 13. E-L Enterprises's claims against the joint venture's insurer were also for negligence and nuisance. E-L Enterprises settled these claims *via* what both parties agree was a release authorized by *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963). "[A] *Pierringer* release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to non-settling defendants and to bar subsequent contribution actions the non-settling defendants might assert against the settling defendants." *VanCleve v. City of Marinette*, 2003 WI 2, ¶ 39, 258 Wis. 2d 80, 100, 655 N.W.2d 113, 123.

¶ 14. The crux of the Sewerage District's argument on appeal in connection with the joint venture is that the trial court should have required E-L Enterprises to have disclosed to the jury the amount of its settlement with the insurance company, and that the trial court should have put the joint venture on the verdict so the jury could have compared the respective contributions of the District and the joint venture to E-L Enterprises's damages. This, the District contends, would have prevented the danger that E-L Enterprises would get a double recovery. There are two fatal flaws to these contentions.

¶ 15. First, the Sewerage District admits that it never specifically asked that the joint venture be included on the special verdict. Thus, it waived the right to assert as error that the joint venture was not on the verdict. *See* WIS. STAT. RULE 805.13(3) ("Counsel may

object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."); *D.L. Anderson's Lakeside Leisure Co. v. Anderson*, 2008 WI 126, ¶ 41, 314 Wis. 2d 560, 582, 757 N.W.2d 803, 814 (the objection must be "explicit"). Although we have the authority to disregard the waiver, *id.*, 2008 WI 126, ¶ 39, 314 Wis. 2d at 581, 757 N.W.2d at 813, we decline to do so because the jury would have had no basis from the evidence to make any apportionment; the District does not in its reply brief dispute E-L Enterprises's assertion that the District presented no evidence of the joint venture's culpability. Thus, we take that assertion as given. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (matter not refuted deemed admitted).

¶ 16. Second, although, as we have seen, the joint venture agreed to be liable to the Sewerage District for damages resulting from "removal or disturbance of groundwater," the District did not pursue its cross-claim against the joint venture's insurance company seeking to recover against it for the joint venture's potential liability to the District as a result of the groundwater diversion, even though in a letter to the trial court dated June 18, 2007, the District asserted that "the only 'Taking' was done by the [joint venture]." (Capitalization in original.) *See* WIS. STAT. RULE 802.07(3) ("A pleading may state as a cross claim any claim by one party against a coparty if the cross claim is based on the same transaction, occurrence, or series of transactions or occurrences as is the claim in the original action . . . . [T]he cross claim may include a claim that the party against whom it is asserted is or

may be liable to the cross claimant for all or part of a claim asserted in the action against the cross claimant."). Had the District pursued its cross-claim, the liability of the joint venture could have been established, and, under the *Pierringer* release, the joint venture's responsibility for the damages to E-L Enterprises's building would have been imputed to E-L Enterprises. It is too late in the day for the District to complain that it did not have a chance to argue to the jury that the joint venture was responsible.

 C. *Damages—calculation.*

■■

¶ 17. The Sewerage District complains that the trial court did not determine a "date of taking" so the jury could apportion the diminution of value of E-L Enterprises's building before and after that date. The trial court instructed the jury on how it should determine E-L Enterprises's damages:

> If the government takes private property for a public use, the government must pay the owner the fair market value of the property that is taken. If only part of an owner's property is taken, and if taking part of the property reduces the value of the property that remains, the government must pay the difference between the fair market value of the property before the taking and the fair market value of the property after the taking.
>
> . . . .
>
> E-L contends that the fair market value of its property was reduced by the cost of repairs a purchaser would be required to perform if the building were sold . . . .
>
> In considering what is just compensation to E-L, consider whether the repairs that actually were per-

formed were necessary, whether the cost of the repairs was reasonable and whether and by how much the need to perform such repairs would have lower[ed] the fair market value of the property in the eyes of a prospective purchaser.

E-L Enterprises asserts in its brief that the Sewerage District "does not cite to the record where it objected to" the trial court's just-compensation instruction. The Sewerage District's reply brief does not dispute this and does not point to a place in the Record where it objected to this instruction. Accordingly, it waived its right to complain on appeal. *See* WIS. STAT. RULE 805.13(3); *Charolais Breeding Ranches, Ltd.*, 90 Wis. 2d at 109, 279 N.W.2d at 499 (matter not refuted deemed admitted). Moreover, the trial court's instruction fairly presented the issue to the jury.

¶ 18. First, the cost of repair, as the trial court's instruction indicated, is a factor that a prospective purchaser would consider to determine the fair market value of the property. This is why "fixer-uppers" go for less than houses that do not need extensive repairs.

¶ 19. Second, the jury also knew from the instruction that it had to consider the effect of the diversion of the groundwater on E-L Enterprises's property "after the taking." Significantly, unlike the traditional "takings" case, where there is a sharp "takings" demarcation, the accretion of damages in this case was, in more than one sense, fluid—they developed over time. The jury knew this, and was able to consider the evidence submitted by both E-L Enterprises and the Sewerage District. *See Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of City of Milwaukee*, 161 Wis. 2d 472, 480–481, 468 N.W.2d 663, 666–667 (1991) (jurors have a broad berth in assessing condemnation damages).

### D. *Damages—legal fees incurred to permit remediation of damage.*

¶ 20. E-L Enterprises had the right to an easement for "ingress and egress" through land abutting its building. The abutting land was owned by Basil Ryan. Ryan would not let E-L Enterprises use the easement to remediate the damage to its building caused by the diversion of the groundwater, and E-L Enterprises spent legal fees to enjoin Ryan from interfering with the repairs. The trial court permitted the jury to award those fees as part of its just-compensation instruction:

> In addition to construction and repair costs, E-L contends a purchaser would have incurred the cost of bringing a lawsuit against its neighbor, Basil Ryan, to gain access to his property adjacent to E-L's building in order to perform the repairs. The law provides that factors affecting the value of property that could influence or sway the decision of a prospective buyer should be considered in the determining [of] the fair market value of the property for purposes of determining just compensation.

The trial court's instruction is an accurate statement of the general rule that the expenditure of legal fees caused by someone causing damages are recoverable by the injured party. *See Weinhagen v. Hayes*, 179 Wis. 62, 65, 190 N.W. 1002, 1003 (1922) (" '[W]here the wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relation with others as to make it necessary to incur expense to protect his interest, such costs and expense should be treated as the legal consequences of the original wrongful act.' ") (quoted source omitted). The Sewerage District does not explain why this rule does not apply here.

Accordingly, we do not discuss further its claim of error. *See Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).

E. *Damages—costs under* WIS. STAT. *§ 32.28(3)(c).*

¶ 21. WISCONSIN STAT. § 32.28(3)(c) provides that a plaintiff who succeeds with its claim under WIS. STAT. § 32.10 is entitled to "litigation expenses." As we have seen, E-L Enterprises prevailed on its inverse-condemnation claim under § 32.10, and we are affirming. Thus, the trial court did not err in awarding to E-L Enterprises its litigation expenses. Further, E-L Enterprises seeks its appellate litigation expenses under § 32.28(3)(c), and we agree that it is entitled to those expenses as well. *See Joyce v. School Dist. of Hudson*, 169 Wis. 2d 611, 618, 487 N.W.2d 41, 44 (Ct. App. 1992). Accordingly, we remand this matter to the trial court for a determination of reasonable appellate-litigation expenses.

F. *Statute of limitations.*

¶ 22. In an undeveloped argument, the Sewerage District contends that E-L Enterprises's inverse-condemnation claim was barred by the six-year statute of limitations in WIS. STAT. § 893.51(1), which declares: "Except as provided in sub. (2), an action to recover damages for the wrongful taking, conversion or detention of personal property shall be commenced within 6 years after the cause of action accrues or be barred. The cause of action accrues at the time the wrongful taking or conversion occurs, or the wrongful

detention begins."[4] Without giving us any supporting authority, the District contends that the groundwater is "personal property" under this provision. It seems to us, however, that groundwater is more akin to real property than it is to "personal property," especially because the eminent-domain chapter defines "[p]roperty" as an all-encompassing term that "includes estates in lands, fixtures and personal property directly connected with lands." WIS. STAT. § 32.01(2).

¶ 23. The trial court used the six-year statute of limitations that applies to actions seeking to recover for damage to "real property." *See* WIS. STAT. § 893.52 ("An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed."). A "cause of action accrues" under this section "when the evidence of injury to property, resulting from the negligent act upon which the action is based, is sufficiently significant to alert the injured party to the possibility of a defect." *Tallmadge v. Skyline Constr., Inc.*, 86 Wis. 2d 356, 359, 272 N.W.2d 404, 405 (Ct. App. 1978) (applying predecessor provision). Thus, there is no merit to the District's contention that the trial court erroneously used a discovery rule in asking the jury whether "E-L kn[e]w, or should it have known, before June 23, 1998, that the District had taken its groundwater." *See Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 24–25, 469 N.W.2d 595, 604 (1991) (explaining the discovery rule) (stray voltage case); *Jacobs v. Nor-Lake, Inc.*, 217 Wis. 2d 625, 633, 579 N.W.2d 254, 258 (Ct. App. 1998) (discovery rule

---

[4] WISCONSIN STAT. § 893.51(2) concerns trade secrets and is not applicable here.

applies to groundwater contamination case). As we have already noted, the accretion of damages in this case developed over time; the jury was thus justified in finding that the "taking" did not sufficiently bloom before the June 23rd date so as to alert E-L Enterprises that the groundwater had been diverted.[5] *See W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 629, 460 N.W.2d 787, 790 (Ct. App. 1990) ("For the statute of limitations to begin to run, a claim must be definitely fixed and not continuing.") (takings case under Wis. Const. art. I, § 13).

## III.

¶ 24. We affirm the judgment, and remand to the trial court for a determination of reasonable appellate-litigation expenses under Wis. Stat. § 32.28(3)(c).

*By the Court.*—Judgment affirmed and cause remanded with directions.

[5] As we have seen, the jury answered the following special-verdict question "[n]o": "Did E-L know, or should it have known, before June 23, 1998, that the District had taken its groundwater?"